OPINION
CUDAHY, Circuit Judge.
The Kaisers owned and operated an Idaho home health agency called Community Home Health, which was a Medicare provider operating under fiscal intermediary Blue Cross of California. In 1998, after Blue Cross ceased making payments to Community Home Health on account of Blue Cross’s previous overpayments, Community Home Health entered Chapter 7 bankruptcy. The Kaisers sued Blue Cross and the federal government on constitutional, statutory and common law claims, asserting that Blue Cross and the federal government acted improperly in their relationship with Community Home Health. The district court dismissed the case, finding no jurisdiction absent exhaustion of administrative review. 42 U.S.C. § 405(g), (h). The Kaisers appeal, arguing that the nature of their claims makes administrative procedures inapposite. Because their claims arise under Medicare, we affirm.
I.
Because this case was dismissed for lack of subject matter jurisdiction, we construe all facts in the light most favorable to the plaintiffs. Warren v. Fox Family Worldwide, Inc., 328 F.3d 1136, 1139 (9th Cir.2003).
Medicare, first enacted in 1965, provides health insurance to eligible aged and disabled persons. Among the services cov *1110 ered under Medicare are home health services, such as part-time nursing care, physical therapy and home health aid services. 42 U.S.C. § 1895d. An agency within the Department of Health and Human Services,' the Health Care Financing Agency (HCFA, recently renamed the Centers for Medicare and Medicaid Services, or CMS), oversees the program. Home health care providers, like other Medicare providers, coordinate with the HCFA through “fiscal intermediaries,” private insurance companies that contract with the HCFA to serve as agents for functions such as claims processing. 42 U.S.C. § 1395h. Blue Cross of California is such a fiscal intermediary.
Gary and Verlene Kaiser (along with the other individual plaintiffs in this lawsuit[1]) were shareholders of Community Home Health (CHH), an Idaho corporation providing home health services to some 500 clients in central and southwest Idaho. Since almost all of its patients were Medicare or Medicaid beneficiaries, CHH was highly dependent on the payments it received from the government through Blue Cross of California, the fiscal intermediary under which it operated; the government was its primary source of revenue. These payments, called periodic interim payments, were made in installments based on estimates of CHH’s volume of business.
In late 1997, Congress passed the Balanced Budget Act of 1997, 105 Pub.L. No. 38, 111 Stat. 251, which directed the HCFA to promulgate new rules on the allowable costs of home health agencies, §§ 4602-03, 111 Stat. at 466-72. These regulations were issued on January 2 and March 31, 1998. Schedule of Limits on Home Health Agency Costs Per Visit, 63 Fed.Reg. 89; Schedule of Per-Beneficiary Limitations on Home Health Agency Costs, 63 Fed.Reg. 15,718. According to the Kaisers, the delay between the passage of the law and the issuance of the regulations left CHH unable to determine, for the first quarter of 1998, what costs Medicare would cover. Because of this uncertainty, CHH dramatically reduced both the number of patients it served and its visits per patient. Meanwhile, CHH kept receiving from Blue Cross periodic interim payments at relatively high levels consistent with its prior patient volume.
On April 27, 1998, CHH, recognizing that it had been overpaid more than one million dollars, sent a letter to Blue Cross requesting an extended repayment plan (ERP). Blue Cross at first denied that there had been an overpayment, then solicited additional information in order to review the request. On June 4, CHH was notified that its ERP request was denied and told that 100% of its future Medicare payments would be withheld until the entire overpayment was recouped. This re-coupment was proposed without issuance of a Notice of Program Reimbursement (NPR). Two weeks later, Blue Cross reversed its position and offered CHH a 23-month ERP. Nonetheless, CHH closed its operations and filed for Chapter 7 bankruptcy on June 25, 1998. The Kaisers, who had personally guaranteed some of CHH’s obligations, also entered bankruptcy.
After the filing of the petition for bankruptcy, Blue Cross auditors, sent to Idaho to audit other Medicare health care providers, allegedly breached confidentiality rules and defamed CHH and its officers, adversely impacting the ability of CHH and the Kaisers to do business in Idaho or elsewhere.
*1111 CHH’s bankruptcy trustee sold to the Kaisers “[a]ll receivables, claims and causes of action against federal agencies or their agents related to Medicare.” Armed with this assignment, the Kaisers filed the present lawsuit. The Kaisers allege that the HCFA violated the Administrative Procedure Act, the Regulatory Flexibility Act and the Fifth Amendment in its issuance of the new home health care regulations; that Blue Cross did not negotiate an ERP in good faith, in violation of 42 C.F.R. § 401.607(d)(1); that Blue Cross wrongfully neglected to issue an NPR; that the sudden cessation of payments by the HCFA and Blue Cross violated 4 C.F.R. §§ 102.1-.20 and the Fifth Amendment; that Blue Cross breached CHH’s confidentiality, defamed CHH and the Kaisers and invaded their privacy; and that Blue Cross and the government did not abide by their contractual obligations to CHH. The Kaisers maintain that Blue Cross acted at all times as the agent of the HCFA and the United States, making all three entities responsible for the Kaisers’ damages.
Magistrate Judge Mikel H. Williams reviewed the defendants’ Motion to Dismiss, and issued a Report and Recommendation supporting the grant of the motion. Magistrate Judge Williams agreed with the defendants that the Kaisers’ claims “arose under” Medicare, and were therefore subject to the 42 U.S.C. § 405(g) requirement that claimants first exhaust administrative review. District Judge Lodge adopted this order in its entirety.
II.
A dismissal for lack of subject matter jurisdiction is reviewed de novo. See Sommatino v. United States, 255 F.3d 704, 707 (9th Cir.2001). A motion to dismiss should not be granted “unless it appears beyond doubt [that] the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.” Clegg v. Cult Awareness Network, 18 F.3d 752, 754 (9th Cir.1994).
We ask first whether the Kaisers’ claims arise under Medicare, requiring them to have exhausted their administrative remedies. Second, we consider whether any exhaustion requirement should be waived. Third, we decide whether the case should be transferred to the Court of Federal Claims. Finally, we ask whether, for any claims that might not be subject to the exhaustion requirement, jurisdiction is barred by sovereign immunity.
A.
“No action against the United States, the [Secretary of Health and Human Services], or any officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this subchapter.” 42 U.S.C. § 405(h) (made applicable to Medicare and modified by 42 U.S.C. § 1395Ü). Jurisdiction over cases “arising under” Medicare exists only under 42 U.S.C. § 405(g), which requires an agency decision in advance of judicial review. 42 U.S.C. § 405(g) (“Any individual, after any final decision of the [Secretary] made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action.”); Ass’n of Am. Med. Colls. v. United States, 217 F.3d 770, 779 (9th Cir.2000) (holding that § 405(h) “is a complete bar to federal question jurisdiction ... unless ‘application of § 405(h) would not simply channel review through the agency, but would mean no review at all.’ ” (quoting Shalala v. Ill. Council on Long Term Care, Inc., 529 U.S. 1, 19, 120 S.Ct. 1084, 146 L.Ed.2d 1 (2000))).
The Kaisers acknowledge that claims such as those disputing the amount of payment for Medicare services should be channeled through the administrative *1112 process. Appellants’ Opening Br. at 16-18. The Kaisers argue, however, that because they seek damages rather than Medicare payments, their claims do not arise under the Medicare Act.[2] Id. at 17 (“The Medicare Act does not provide a procedure for damages.”). However, the set of cases arising under Medicare is far larger than the Appellants argue. For example, suits for injunctive relief not available under Medicare may still be found to arise under Medicare. See Heckler v. Ringer, 466 U.S. 602, 615, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984) (“It is of no importance that respondents ... sought only declaratory and injunctive relief and not an actual award of benefits as well.”); Illinois Council, 529 U.S. at 14, 120 S.Ct. 1084 (refusing to “accept a distinction that limits the scope of § 405(h) to claims for monetary benefits”). Similarly, a suit seeking extra-Medicare monetary damages may also be a suit arising under Medicare. See Marin v. HEW, Health Care Fin. Agency, 769 F.2d 590, 592 (9th Cir.1985) (noting, in a home health service provider’s suit against the government “for damages caused by negligent failure to process” claims, that “[t]he substantive cause of action [was] anticipated by the statute” and that the plaintiffs “demand for greater damages than the statute provides would render meaningless the jurisdiction restriction of § 405(h)”). The fact that the Kaisers seek damages beyond the reimbursement payments available under Medicare does not exclude the possibility that their case arises under Medicare. Simply put, the type of remedy sought is not strongly probative of whether a claim falls under § 405(h).
Indeed, courts have considered numerous cases that do not, on their face, appear to claim specific Medicare benefits or reimbursements yet have been found to arise under Medicare. One category of such cases are those cases that are “[c]leverly concealed claims for benefits.” United States v. Blue Cross & Blue Shield of Ala., Inc., 156 F.3d 1098, 1109 (11th Cir.1998). For example, in Ringer, 466 U.S. at 611-12, 104 S.Ct. 2013, the Supreme Court denied jurisdiction in a case brought by a group of patients seeking Medicare coverage for a particular medical procedure. There, the patients had formulated their claims under various non-Medicare provisions, such as other statutes and the Constitution. However, the Supreme Court found that a claim for benefits was actually at the heart of their complaint and applied 42 U.S.C. § 405(h). Id. at 614-17, 104 S.Ct. 2013. The Eleventh Circuit has described Ringer as holding that “[s]ubsection 405(h) prevents beneficiaries ... from evading administrative review by creatively styling their benefits and eligibility claims as constitutional or statutory challenges to Medicare statutes and regulations.” Blue Cross & Blue Shield of Ala., 156 F.3d at 1104.
Rather than looking at the legal specifics of the claims that are raised, the Supreme Court has applied two tests to determine whether claims arise under Medicare. First, claims that are “inextricably intertwined” with a Medicare benefits determination may arise under Medicare. See Ringer, 466 U.S. at 614, 104 S.Ct. 2013. Second, “claims in which ‘both the standing and the substantive basis for the presentation’ of the claims” is the Medicare Act may arise under Medicare. Ringer, 466 U.S. at 615, 104 S.Ct. 2013 (quoting Weinberger v. Salfi, 422 U.S. 749, 760-61, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). In this round, we are to strike a *1113 balance between “individual hardship resulting from delays in the administrative process ... [and] the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year.” Ringer, 466 U.S. at 627, 104 S.Ct. 2013.
The principal case on which the Kaisers rely is Ardary v. Aetna Health Plans of S. Cal., Inc., 98 F.3d 496, 501 (9th Cir.1996), which rejected an “overinclusive reading of the ‘arising under’ language.” In that case, Aetna Health Plans had allegedly promised in a marketing presentation that it would, under its HMO plan, immediately authorize Cynthia Ardary’s airlift evacuation to a sophisticated medical facility if she needed emergency care while at her home in relatively remote Big Bear, California. When Cynthia suffered a heart attack, the HMO administrator failed to authorize the airlift, and Cynthia died. Cynthia’s family filed a lawsuit against Aetna for negligence, infliction of emotional distress and misrepresentation. While recognizing that § 405(g) and (h) apply to HMOs operating under Medicare, we found that the Ardarys’ claims did not arise under Medicare, meaning exhaustion was unnecessary for jurisdiction. The Ar-dary court considered the two Ringer tests. First, we found that the standing for the Ardarys’ claims were “state common law theories and not the [Medicare] Act.” Ardary, 98 F.3d at 500. Second, we held that the Ardarys’ state law claims were “not’ inextricably intertwined’ because the Ardarys [were] at bottom not seeking to recover benefits.” Id. (emphases in original). See also Hofler v. Aetna U.S. Healthcare of Cal., Inc., 296 F.3d 764, 769 (9th Cir.2002) (applying the two Ringer tests and Ardary and allowing a similar wrongful death suit to proceed).
We agree with the Kaisers that a broad reading of Ardary could weigh in their favor. Like the plaintiffs in Ardary, the Kaisers are not, strictly speaking, seeking reimbursement for Medicare services and are proceeding under various statutory and common law theories. The Ardarys suffered a death because of the alleged torts committed by Aetna; the Kaisers suffered the loss of their business and personal bankruptcy because of alleged wrongs committed by Blue Cross and the HCFA. We find, however, far more differ'ences distinguishing the two claims. We characterized the question in Ardary as follows:
[D]oes the Medicare Act, which provides for exclusive administrative review of all claims “arising under” that Act, apply to preclude the heirs of a deceased Medicare beneficiary from bringing state law claims for wrongful death against a private Medicare provider when those claims do not seek recovery of Medicare benefits but instead seek compensatory and punitive damages on the grounds that the provider both improperly denied emergency medical services and misrepresented its managed care plan to the beneficiary?
Ardary, 98 F.3d at 499. Consistent with the above articulation of the issue, Ardary focused on claims “against a private Medicare provider for torts committed during its administration of Medicare benefits” and the “rights of patients.” Id. at 501. Indeed, the Ardary analysis convinces us that its holding does not extend beyond patients and torts committed in the sale or provision of medical services. For example, the Ardary court found no cases “directly addressing the question raised” in the case, id. at 499 n. 8, and expressly distinguished cases such as Bodimetric Health Servs., Inc. v. Aetna Life & Casualty, 903 F.2d 480 (7th Cir.1990), as being inapplicable because of factual differences, Ardary, 98 F.3d at 501.
*1114 On the contrary, Bodimetric is perfectly applicable to the facts in this case. In Bodimetric, a home health agency ran into difficulties in its relationship with its Medicare fiscal intermediary, Aetna. As a result of Aetna’s refusal to pay certain claims, Bodimetric was forced to shut down. Bodimetric in its lawsuit made numerous claims against Aetna, including fraud, fraudulent concealment, breach of contractual relationship, tortious breach of implied covenant of good faith and fair dealing and intentional harm to property interest. Bodimetric, 908 F.2d at 483. The Seventh Circuit concluded that “litigants who have been denied benefits” should not be allowed to obtain federal jurisdiction by “recharacterizing their claims under state and federal causes of action,” and rejected Bodimetric’s argument that its damages claims were not “inextricably intertwined.” Id. at 487.
The Seventh Circuit has also confronted facts similar to those at hand since Bodimetric and Ardary. In Ancillary Affiliated Health Servs. v. Shalala, 165 F.3d 1069, 1071 (7th Cir.1998), Medicare had overpaid provider Ancillary Affiliated. Ancillary Affiliated wished to repay the overpayment over a period of 18 months, but the HCFA chose to withhold all reimbursement checks until the overpayment had been recouped in full. Id. at 1069-70. Although Ancillary Affiliated was pursuing a Due Process claim, the Seventh Circuit determined that there was no subject matter jurisdiction because “ ‘both the standing and the substantive basis for the ... claims’ stem[med] from the Medicare Act.” Id. at 1070 (quoting Ringer, 466 U.S. at 615, 104 S.Ct. 2013). The Seventh Circuit affirmed the dismissal for lack of jurisdiction.[3]
Another relevant recent case is Midland Psychiatric Assocs., Inc. v. United States, 145 F.3d 1000 (8th Cir.1998). In that case, Mutual of Omaha Insurance Company denied, for several reasons, many of Medicare provider Midland Psychiatric’s claims and refused to pay hospitals for Midland’s services, causing Midland to lose current business as well as future business prospects. Id. at 1001-02. Midland sued the United States and Mutual of Omaha for, inter aha, tortious interference with the provider’s “past and prospective hospital contracts.” Id. at 1002. The Eighth Circuit found that the tortious interference claim was “inextricably intertwined” with the Medicare carrier’s decisions regarding the provider’s Medicare claims. Id. at 1004 (“[Hjearing Midland’s tortious interference claim would necessarily mean re-deciding Mutual’s Midland-related Medicare claims decisions.”). The Midland court also recognized that “[a] claim may arise under the Medicare Act even though ... it also arises under some other law.” Id. at 1004.
The Kaisers’ claims here are “inextricably intertwined” with CHH’s claims for Medicare reimbursement. The Kaisers allege faults in the HCFA’s issuance of the new home health care regulations, Blue Cross’s temporary failure to negotiate an ERP, Blue Cross’s failure to issue an NPR and the sudden cessation of payments by the HCFA and Blue Cross. Each of these claims deals with the appropriateness of the HCFA’s and Blue Cross’s decisions with respect to the compensation the Kaisers should have received for the services it provided to Medicare beneficiaries. Had the Kaisers been immediately granted a satisfactory ERP, for example, or had they never accrued an overpayment *1115 in the first place, they never would have brought this case. Hearing most of the Kaisers’ claims would necessarily mean re-deciding Blue Cross’s CHH-related Medicare decisions. Midland Psychiatric, 145 F.3d at 1004. Nor does the procedural nature of some of the alleged violations alter the fact that they arose from the Medicare relationship between CHH and the government. See Ringer, 466 U.S. at 637, 104 S.Ct. 2013 (stating that § 405(h) bars suits without regard to, whether they are, on their face, “procedural” or “substantive”).
The only claim that arguably is not subject to 42 U.S.C. § 405(h) is the plaintiffs’ defamation and invasion of privacy claim, since the alleged statements, while they concern CHH’s dealings with the HCFA, are largely independent of the underlying Medicare law. We treat the defamation and invasion of privacy claim below in Section D. All other claims arise under Medicare and so are subject to § 405(h).
B.
Because most of the Kaisers’ claims arise under Medicare, the Kaisers must, for those claims, proceed under 42 U.S.C. § 405(g). That is, they must satisfy the presentment and exhaustion requirements under that subsection prior to seeking judicial relief. See Ringer, 466 U.S. at 605-06, 104 S.Ct. 2013. Of these two requirements, the second is waivable but the first is not. See Mathews v. El-dridge, 424 U.S. 319, 328, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The Kaisers argue that there are no administrative remedies available to them and that the district court should have waived the exhaustion of remedies requirement.
Setting aside the presentment question, it is apparent that the Kaisers do not meet the conditions for waiver of exhaustion. In Johnson v. Shalala, 2 F.3d 918, 921 (9th Cir.1993), we noted the three prerequisites for waiver of the exhaustion requirement: “The claim must be (1) collateral to a substantive claim of entitlement (collaterally), (2) colorable in its showing that denial of relief will cause irreparable harm (irreparability), and (3) one whose resolution would not serve the purposes of exhaustion (futility).” Even if we were to conclude that the claim here is collateral to the underlying Medicare reimbursement claim (assuming for now that claims may be collateral even if inextricably intertwined), the other two requirements are not met. While the Kaisers have alleged grave injury, past injury does not meet the irreparability requirement for waiver. The claimant must show that denial of relief will cause a harm. And, while the administrative action may in some sense be futile for the Kaisers (if the administrative process cannot provide the damages the Kaisers seek), administrative exhaustion of the Kaisers’ claims would still serve the purposes of exhaustion and not be futile in the context of the system.[4] There *1116 is no doubt that an administrative record would provide clarification and would help resolve the Kaisers’ claims in court. Because the plaintiffs have not exhausted available administrative review, the district court lacked jurisdiction to consider those of their claims that arise under Medicare, and dismissal on those claims is affirmed.
C.
The Kaisers argue that if jurisdiction did not he in the district court, that court should have transferred their claims to the Court of Federal Claims, which they argue would have jurisdiction under the Tucker Act. See 28 U.S.C. § 1491(a)(1) (conferring jurisdiction on the Court of Federal Claims for claims against the United States based on the Constitution, statutes and contracts). The district court did not consider this argument.
This court has previously recommended referral to the Court of Federal Claims for Medicare-related claims such as the Kaisers’. Drennan v. Harris, 606 F.2d 846, 850 (9th Cir.1979) (citing Dr. John T. MacDonald Found., Inc. v. Califano, 571 F.2d 328, 332 (5th Cir.1978)). However, in Klein v. Heckler, 761 F.2d 1304, 1312 n. 14 (9th Cir.1985), we recognized that such a procedure was “of doubtful validity,” given that the Court of Federal Claims does not recognize itself to have jurisdiction over claims arising under Medicare. See St. Vincent’s Med. Ctr. v. United States, 32 F.3d 548, 550-51 (Fed.Cir.1994) (noting that § 405(h) “unequivocally provides that ‘no action’ arising under the Medicare Act shall be brought in any forum or before any tribunal that is not specifically provided for in the Medicare Act” and that the “Act does not provide for jurisdiction in the Court of Federal Claims”). And, to the extent that the Kaisers’ claims do not arise under Medicare, the district court would have jurisdiction, and there would be no need to involve the Court of Federal Claims. In either case, there is no valid argument for transferring this matter to the Court of Federal Claims.
D.
The Appellees argued below, and argue on appeal, that sovereign immunity applies to defeat any of the Kaisers’ claims that might otherwise be valid. With respect to the bulk of the Kaisers’ claims, which are in any event foreclosed by § 405(h), there is no need to reach this *1117 question. However, we agree that to the extent the Kaisers’ defamation and invasion of privacy claim does not arise under Medicare, it is barred by sovereign immunity.
The United States, including its agencies and its employees, can be sued only to the extent that it has expressly waived its sovereign immunity. United States v. Testan, 424 U.S. 892, 899, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976). Fiscal intermediaries, when acting as agents for the HCFA, are also protected by sovereign immunity.[5] Shands Teaching Hosp. & Clinics, Inc. v. Beech St. Corp., 208 F.3d 1308, 1311 (11th Cir.2000) (collecting cases); cf. Anderson v. Occidental Life Ins. Co., 727 F.2d 855, 856 (9th Cir.1984) (“The United States is the real party in interest in actions against Medicare carriers because recovery would come from the federal treasury.”). Absent a waiver of sovereign immunity, courts have no subject matter jurisdiction over cases against the government. United States v. Mitchell, 463 U.S. 206, 212, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983).
The Kaisers’ attempts to find a waiver of sovereign immunity are unsuccessful. Of course, the Kaisers could not take advantage of any waiver of sovereign immunity for cases arising under Medicare, since any such claim is defeated by the exhaustion requirement of 42 U.S.C. § 405(g). Waiver of sovereign immunity is not available to them under 5 U.S.C. § 702 or Bivens v. Six Unknown Named Agents of the Fed. Bureau of Narcotics, 403 U.S. 388, 390, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). See Presbyterian Church (U.S.A) v. United States, 870 F.2d 518, 524 (9th Cir.1989) (noting that 5 U.S.C. § 702 only waives sovereign immunity for non-monetary claims); Clemente v. United States, 766 F.2d 1358, 1363-64 (9th Cir.1985) (holding that Bivens claims are available against officials acting in their individual capacity for their individual actions). Further, 11 U.S.C. § 106(a), which refers to waivers of sovereign immunity in bankruptcy proceedings, could not apply since any consideration of claims against the government in CHH’s bankruptcy would likely require consideration of the merits of the Medicare claims, again invoking 42 U.S.C. § 405(g). Moreover, the Federal Tort Claims Act, 28 U.S.C. § 2680(h), does not permit suits against the United States for defamation. See, e.g., McLachlan v. Bell, 261 F.3d 908, 912 (9th Cir.2001). The Kaisers have not identified a valid basis for suing the government that avoids the jurisdictional bar of sovereign immunity, and, thus, any of their claims not barred under § 405(h) also fail.
AFFIRMED.

. For simplicity,, we sometimes refer, in this memorandum disposition, to all of the plaintiffs collectively as "the Kaisers.”

. The Kaisers further note that CHH is seeking an actual claim for Medicare payments through the administrative process, and that those claims are not relevant to the claims here. Appellants’ Opening Br. at 19 n. 4.

. While the facts of Ancillary Affiliated are very close to the facts at hand, Ancillary Affiliated does not fit squarely here because the plaintiff in that case sought an injunction compelling the reimbursement payments, unlike the plaintiffs here who seek extra-Medicare damages. Ancillary Affiliated, 165 F.3d at 1069.

. The potential futility for the Kaisers of bringing this action before the administrative process merits additional discussion. As we noted above, much of the Kaisers’ argument that their claims do not "arise under” Medicare was grounded on the fact that the administrative process could not award the type of damages they sought. Indeed, 42 U.S.C. § 1395oo, which describes the function of the Provider Reimbursement Review Board (PRRB), specifies that the PRRB’s role is to decide "the amount of total program reimbursement due” to providers. § 1395oo(1)(A). This futility argument, however, goes to whether exhaustion should be waived, rather than whether § 405(g) and (h) apply in the first place, which is guided by the "inextricably intertwined” test of Ringer. In other words, the set of claims which are subject to § 405(g) and (h) is greater than the set of claims that the PRRB can fully resolve.
This brings us to the disconnect that cases may "arise under” Medicare under § 405(h) and yet contain issues which are not suitable for resolution by the PRRB. This disconnect, while at first puzzling, makes sense in the *1116 context of the purposes of exhaustion. "Exhaustion is generally required as a matter of preventing premature interference with agency processes, so that the agency may function efficiently and so that it may have an opportunity to correct its own errors, to afford the parties and the courts the benefit of its experience and expertise, and to compile a record which is adequate for judicial review.” Salfi, 422 U.S. at 765, 95 S.Ct. 2457. If a court were to prematurely tackle a question inextricably intertwined with an issue properly resolved by an agency, the court would defeat the purposes of § 405(g) and (h) even if the question was not one that the agency has the authority to answer fully. More specifically, even if the claims raised here are broader than those suitable for resolution by the PRRB, deciding the Kaisers’ claims would mean also passing judgment on questions which are appropriately first answered by the PRRB. This is why all inextricably intertwined claims must first be raised in an administrative process. In that process, the agency, with the benefit of its experience and expertise, can resolve whatever issues it can, limiting the number of issues before judicial review (and limiting review on those issues according to the appropriate standard of deference). On other issues, the PRRB may make a determination that it is without authority to decide and grant the provider a right to obtain judicial review. 42 U.S.C. § 1395oo(f)(l). Such determinations would satisfy presentment and exhaustion, and permit us to hear claims such as those now before us. This explanation is the best we can provide of a sometimes puzzling juxtaposition of requirements.

. The plaintiffs have acknowledged in their pleadings that "Blue Cross acted at all times as the agent of the HCFA and the United States.” Am. Compl. at 10 para. XXIX, Record at 2.