*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 08a0163p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

RAYMOND H. GIESSE,

　　　　　　*Plaintiff-Appellant,*

　　*v.*

SECRETARY OF THE DEPARTMENT OF HEALTH AND
HUMAN SERVICES; DEPARTMENTAL APPEALS
BOARD, Medicare Appeals Council; KAISER
PERMANENTE HEALTH PLAN OF OHIO; MAXIMUS
CENTER FOR HEALTH DISPUTE RESOLUTION;
JEANNIE CHRISTIANSEN, Kaiser Permanente Health
Plan of Ohio,

　　　　　　*Defendants-Appellees.*

No. 06-4497

>

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 04-02536—Lesley Brooks Wells, District Judge.

Submitted: December 6, 2007

Decided and Filed: April 23, 2008

Before: MERRITT, COLE, and GRIFFIN, Circuit Judges.

_____

## COUNSEL

**ON BRIEF:** Stephen D. Hartman, Craig R. Giesze, KERGER & ASSOCIATES, Toledo, Ohio, for
Appellant. Betty J. Konen, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, Anne
Marie Sferra, Sarah E. Hurst, BRICKER & ECKLER, Columbus, Ohio, Barbara J. Leukart, JONES
DAY, Cleveland, Ohio, Jane F. Warner, Murray K. Lenson, ULMER & BERNE, Cleveland, Ohio,
Dennis R. Fogarty, DAVIS & YOUNG, Cleveland, Ohio, for Appellees.

　　　　GRIFFIN, J., delivered the opinion of the court. MERRITT, J. (p. 10), delivered a separate
concurring opinion. COLE, J. (pp. 11-12), delivered a separate dissenting opinion.

---

**OPINION**

---

GRIFFIN, Circuit Judge.  Plaintiff-appellant Raymond Giesse appeals the district court's grant of two motions to dismiss for lack of subject matter jurisdiction after he filed a suit seeking damages subsequent to an alleged wrongful termination of medical care.  Plaintiff argues that the district court had jurisdiction over his claims because he has a vested "property interest" in the receipt of Medicare benefits, and that the termination of these benefits, without adequate due process, amounted to a deprivation of his constitutional rights.  Because he alleges constitutional claims, and because these claims are "wholly collateral" to his administrative claims, plaintiff contends that his federal claims do not "arise under" the Medicare Act, and may therefore be addressed by the district court.  In the alternative, plaintiff argues that an implied right of action exists in the Medicare context under *Bivens v. Six Unknown Agents of the Federal Bureau of Narcotics*, 403 U.S. 388 (1971).  We disagree and affirm the judgment of the district court.

I.

Plaintiff is an Ohio resident and an enrollee in a Kaiser Medicare + Choice ("M+C") Plan.  This plan allows private insurance companies to contract with the federal government to provide Medicare benefits to enrollees.

Giesse suffered a stroke on June 20, 2003, and was initially treated at MetroHealth Medical Center, a Kaiser affiliate.  His treating physician, Tandra Usharani, M.D., recommended that Giesse undergo occupational therapy, speech therapy, and physical therapy on a daily basis to rehabilitate the physical and mental skills lost due to the stroke.

On July 16, 2003, Giesse was transferred to Aristocrat Berea ("Aristocrat"), a skilled nursing facility ("SNF").  At this time, Giesse still required daily physical and occupational therapy.  Eight days later, on July 24, 2003, Aristocrat's Director Jeannie Christiansen orally notified Giesse's son, an attorney residing in Chile, that Giesse's daily SNF benefits would be terminated on July 29 or 31, 2003.  Christensen also informed Giesse's son that Giesse would receive a three-day written notice to leave the facility.  Her stated rationale for termination of SNF benefits was that Giesse had reached a "plateau."

On July 28, 2003, Christiansen orally notified Giesse that he would be transferred to another facility.  Christiansen provided Giesse with a written notice of non-coverage that stated that Medicare would not cover Giesse's daily SNF benefits as of August 1, 2003, because he no longer required daily physical and occupational therapy.  This notice also described Giesse's right to appeal the decision to terminate benefits, the appeal process, and an available 72-hour expedited appeal process.  Giesse refused to sign this notice of non-coverage until his son, who exercised power of attorney, could review the document.  Giesse's son received the above notice on July 31, 2003.

On August 1, 2003, Dr. Ammaji Narra, plaintiff's consulting Kaiser physician, tendered the necessary paperwork indicating that Giesse was eligible under Medicare Part B for homebound care with intermittent care on an outpatient basis.  That same day, Giesse moved to Brookside Estates, an assisted living center, on his own accord, financing the move by selling his house far below market value.  At Brookside Estates, he received physical, occupational, and speech therapy on an intermittent basis.

On September 29, 2003, Giesse filed a request for reconsideration of the termination of his daily SNF benefits.  In this request for reconsideration, Giesse requested that the decision be rescinded as a "purely procedural matter" and asked for monetary compensation for damages

resulting from out-of-pocket disbursements to Brookside Estates, attorney's fees, the distress sale of his personal residence, and unspecified special damages. Giesse did not request to be readmitted to the SNF, or otherwise seek daily nursing care. On October 16, 2003, Kaiser denied his request for reconsideration and notified Giesse's legal representation of the same. Kaiser further stated that it had submitted the case to the Maximus Center for Health Dispute Resolution ("Maximus") for an independent, external review. Maximus, on November 17, 2003, dismissed Giesse's case, reading his request as a "grievance" rather than a "valid appeal for medical coverage." Maximus further stated that "Medicare does not permit us to make a decision about these types of complaints."

Giesse, on January 16, 2004, filed a request for an administrative hearing before an Administrative Law Judge ("ALJ"). The ALJ dismissed the case on March 22, 2004, finding that under federal regulations it had no jurisdiction to review the matter because no reconsidered decision had been made. On May 26, 2004, Giesse appealed to the Medicare Appeals Council ("MAC"). The MAC denied his request for review on October 25, 2004, again finding that Giesse was not entitled to an ALJ hearing without having received an administrative determination.

Giesse filed the instant lawsuit on December 27, 2004, in the United States District Court for the Northern District of Ohio. On January 14, 2005, Giesse filed an Amended Complaint, raising procedural and substantive due process claims, as well as federal constitutional tort, breach of contract, fraud, medical malpractice, respondeat superior, intentional or reckless infliction of emotional distress, and additional punitive and exemplary damages claims. Giesse sought review of the ALJ's decision, monetary damages in the amount of $42,630, compensatory damages in the amount of $1,000,000, consequential damages in the amount of $883,237.76, punitive damages in the amount of $3,000,000, as well as costs and attorney's fees. In the alternative, Giesse sought reversal of the administrative decisions and a remand for an administrative hearing with an ALJ. Both the Secretary of Health and Human Services ("the Secretary") and Kaiser filed motions to dismiss the Amended Complaint for lack of subject matter jurisdiction and for failure to state a claim upon which relief could be granted. On August 1, 2005, Giesse sought leave to file a second amended complaint, seeking to raise a claim under the Federal Tort Claims Act ("FTCA").

The district court, on September 27, 2006, dismissed Giesse's amended complaint without prejudice for lack of subject matter jurisdiction and denied Giesse's motion to file a second amended complaint. This appeal followed.

## II.

This court reviews de novo the dismissal of a complaint under FED. R. CIV. P. 12(b)(1) for lack of jurisdiction. *Colonial Pipeline Co. v. Morgan*, 474 F.3d 211, 217 (6th Cir. 2007). When, however, the district court goes beyond analyzing the complaint on its face and instead delves into the factual predicates for jurisdiction, the court reviews for clear error. *Howard v. Whitbeck*, 382 F.3d 633, 636 (6th Cir. 2004). Additionally, when subject matter jurisdiction is challenged, the plaintiff has the burden of proving jurisdiction in order to survive the motion to dismiss. *Madison-Hughes v. Shalala*, 80 F.3d 1121, 1130 (6th Cir. 1996).

The Secretary has created an administrative review process that allows Medicare enrollees, such as Giesse, to challenge adverse decisions by their M+C providers. 42 U.S.C. § 1395w-22(g); 42 C.F.R. § 422.560. Aside from this administrative review process, the Medicare Act bars judicial review of claims that "arise under" the Act. The language of section 405(h), as incorporated by 42 U.S.C. § 1395ii, reads:

> The findings and decision of the Commissioner of Social Security after a hearing shall be binding upon all individuals who were parties to such hearing. No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any

person, tribunal, or governmental agency except as herein provided.  No action against the United States, the Commissioner of Social Security, or any other officer or employee thereof shall be brought under section 1331 or 1346 of Title 28 to recover on any claim arising under this title.

42 U.S.C. § 405(h).

Section 405(h) "channels most, if not all, Medicare claims through this special review system." *Shalala v. Illinois Council on Long Term Care*, 529 U.S. 1, 8 (2000).  Moreover, § 405(h) definitively bars judicial review of legal challenges to the denial of Medicare benefits.  As the Supreme Court has noted:

[The language of § 405] clearly appl[ies] in a typical Social Security or Medicare benefits case, where an individual seeks a monetary benefit from the agency (say, a disability payment, or payment for some medical procedure), the agency denies the benefit, and the individual challenges the lawfulness of that denial.  The statute plainly bars § 1331 review in such a case, irrespective of whether the individual challenges the agency's denial on evidentiary, rule-related, statutory, constitutional, or other legal grounds.

*Illinois Council*, 529 U.S. at 8.

Thus, "[t]he plain language of 405(h), as incorporated by § 1395ii, precludes the federal courts from entertaining claims based on the jurisdictional provisions of the Federal Tort Claims Act, § 1346 of Title 28, or the statutory grant of jurisdiction over federal questions, § 1331 of Title 28, if the claims 'arise under' the Medicare Act." *Livingston Care Ctr., Inc. v. United States*, 934 F.2d 719, 721 (6th Cir. 1991).  The Supreme Court and our court have both held that a claim "arises under" the Medicare Act if the Act provides the "'standing and substantive basis for the presentation of [plaintiff's] constitutional contentions. . . .'" *Id*. at 721-22 (quoting *Weinberger v. Salfi*, 422 U.S. 749, 760-61 (1975)).  We conclude that plaintiff's claims indeed "arise under" the Medicare Act, as he contends that the harm he suffered was the result of the "arbitrary and capricious" termination of his medical benefits.  This being the case, section 405(h) clearly prohibits judicial review of plaintiff's claims absent exhaustion of available administrative remedies.

The administrative procedures utilized in addressing an enrollee's claim against a M+C organization depends on whether the enrollee's challenge is classified as a "grievance" or as an appeal from an "agency determination."  An "agency determination" is defined as:

[A]ny determination made by an [M+C] organization with respect to any of the following:

(1)  Payment for temporarily out of the area renal dialysis services, emergency services, post-stabilization care, or urgently needed services.

(2)  Payment for any other health services furnished by a provider other than the [M+C] organization that the enrollee believes –

(i)  Are covered under Medicare; or

(ii)  If not covered under Medicare, should have been furnished, arranged for, or reimbursed by the [M+C] organization.

(3) The [M+C] organization's refusal to provide or pay for services, in whole or in part, including the type or level of services, that the enrollee believes should be furnished or arranged for by the [M+C] organization.

(4) Discontinuation or reduction of a service if the enrollee believes that continuation of the services is medically necessary.

(5) Failure of the [M+C] organization to approve, furnish, arrange for, or provide payment for health care services in a timely manner, or to provide the enrollee with timely notice of an adverse determination, such that a delay would adversely affect the health of the enrollee.

42 C.F.R. § 422.566(b).

If an enrollee disagrees with the "agency determination" of the M+C provider, the enrollee can request the provider to reconsider its decision. 42 U.S.C. § 1395w-22(g)(2); 42 C.F.R. § 422.578. A M+C organization typically has thirty days to issue a reconsidered decision, 42 C.F.R. § 422.590(a)(2), but if the provider refuses to provide or pay for a service the enrollee believes is medically necessary, the enrollee may request an expedited 72-hour review. 42 C.F.R. §§ 422.584, 422.590(d). To qualify for expedited review, the enrollee or his physician must submit an oral or written request for the expedited reconsideration to the M+C provider. 42 C.F.R. § 422.584(b)(1). Once submitted, the M+C organization must provide expedited review if application of the standard thirty-day review period "could seriously jeopardize the life or health of the enrollee or the enrollee's ability to regain maximum function." 42 C.F.R. § 422.584(c)(2)(i).

If the M+C does not reverse its earlier adverse decision, it must send the case to an outside health dispute resolution agency, such as Maximus, for independent review. 42 U.S.C. § 1395w-22(g)(4); 42 C.F.R. § 422.592. If the outside reviewing agency upholds the M+C organization's determination, and the amount in controversy is at least $1,000, the enrollee may request a hearing before an ALJ. 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.600(a). If the enrollee disagrees with the decision of the ALJ, he may request that the MAC review the case. 42 C.F.R. § 422.608. The enrollee may then seek judicial review of the MAC's decision, or may seek judicial review of the ALJ's decision if the MAC declines to review the ALJ's decision. 42 U.S.C. § 1395w-22(g)(5); 42 C.F.R. § 422.612.

The Medicare Act's grant of subject matter jurisdiction only permits judicial review of "the final decision of [the Secretary] made after a hearing." 42 U.S.C. § 405(g). Thus, judicial review of claims arising under the Medicare Act is available only after the Secretary renders a "final decision" on the enrollee's claim. *Heckler v. Ringer*, 466 U.S. 602, 605 (1984); *Califano v. Sanders*, 430 U.S. 99, 108 (1977) (citations omitted) ("This provision clearly limits judicial review to a particular type of agency action, a final decision of the Secretary made after a hearing."). An enrollee receives a final decision from the Secretary after he exhausts all administrative appeals of an adverse administrative determination. 42 U.S.C. § 1395-w-22(g); 42 C.F.R. § 422.560. If, upon further review, the enrollee prevails, he may seek either the provision or reinstatement of medical services, or request reimbursement for monies expended in providing those medical services. 42 C.F.R. § 422.618. An award of damages is not available.

A grievance "is any complaint or dispute, other than one that constitutes an organizational determination, expressing dissatisfaction with any aspect of an [M+C] organization's or provider's operations, activities, or behavior, regardless of whether remedial action is requested." 42 C.F.R. § 422.561. Grievances, unlike organizational determinations, do not have additional levels of review beyond the M+C organization. 42 U.S.C. § 1395w-22(f); 42 C.F.R. §§ 422.562(b), 422.564(b). As

there are no additional levels of review beyond the M+C organization, there is no "final decision" by the Secretary that allows for judicial review.  *Id.*

Applying the above framework, we hold that the district court did not err in categorizing plaintiff's claims as grievances, or, perhaps more accurately, we conclude that plaintiff's claims are not appeals from an administrative determination.  The broad definition provided for "grievance" in 42 C.F.R. § 422.561 demonstrates the grievance procedure's function is to serve as a "catch-all" for claims that fall outside the ambit of appeals from administrative determinations.  A greivance is defined as "*any* complaint or dispute, *other than one that constitutes an organization determination . . . .*"  42 C.F.R. § 422.561 (emphasis added).  This reading is further buttressed by the language of 42 C.F.R. § 422.562, which sets forth the responsibilities of a Medicare organization, here Kaiser, instructing that a grievance procedure shall be established for the purpose of "addressing issues that do not involve organization determinations."  42 C.F.R. § 422.562(a)(1).  As it is clear that the grievances are defined not by what they are, but rather by what they are not, our inquiry turns to whether Giesse's complaint meets the definition of an appeal from an administrative determination.  We conclude that it does not.

Suits that challenge the termination of daily SNF care are appealable, but only when the remedy sought is a reinstatement of those services.  Giesse did not seek the reinstatement of daily therapy at Aristocrat or another SNF, nor did he seek reimbursement for payments made to maintain daily therapy at a SNF.  He instead sought reimbursement of payments made to Brookside Estates, damages resulting from the distress sale of his residence, and other special damages.  Because these remedies are unavailable forms of relief under the M+C framework, Kaiser was unable to render an "organizational determination" concerning Giesse's claim.  An appeal is defined as the "procedures that deal with the review of adverse organizational determinations . . . ."  42 C.F.R. § 422.561.  Giesse does not seek review of the determination itself for any substantive purpose; indeed, he admits that he wishes Kaiser's decision be "rescinded as a purely *procedural* matter" and that the "only substantive legal remedy . . . is monetary compensation for damages . . . ."

We, however, do not subscribe to plaintiff's rather glib reading of the Medicare Act and its appeal procedures.  The organizational determination, from which an aggrieved plaintiff may appeal, is not to be treated as a mere formality or as a method to bootstrap a damages claim; this is particularly true in light of Congress' unequivocal prohibition of suits outside of valid appeals that seek review of adverse organizational determinations.  *See* 42 U.S.C. § 405(h).  To read it otherwise would allow a future plaintiff who received an adverse organizational determination to purposely not avail himself of the proper review procedures and instead proceed directly to court to seek damages.  Such a result would essentially nullify the language of section 405(h).

We note that Kaiser, upon its rejection of plaintiff's initial appeal, did not inform him that his complaint was considered a grievance.  Instead, Kaiser, at this early stage, appears to have treated Giesse's complaint as an appeal.  In Kaiser's written rejection of Giesse's appeal, it stated "[y]our appeal has been reviewed.  Since we did not overturn our initial decision, we hereby wish to inform you that the Plan is submitting your file for consideration to [Maximus] Center for Health Dispute Resolution."  Moreover, Kaiser forwarded Giesse's complaint to Maximus, a procedure that occurs only after an administrative decision is rendered.  This failure to notify Giesse of the classification of his claim contravenes 42 C.F.R. § 422.564, which requires that "[u]pon receiving a complaint, [a Medicare] organization must promptly determine and inform the enrollee whether the complaint is subject to its grievance procedures or its appeal procedures."

This omission, however, does not mean plaintiff is entitled to judicial review.  First and foremost, plaintiff did not raise this argument either at the district court level or on appeal, and it is therefore deemed waived.  *See Farmer Labor Org. Comm. v. Ohio State Highway Patrol*, 308 F.3d 523, 544 n.8 (6th Cir. 2002) ("It is well established that an issue not raised in a party's briefs may

be deemed waived."); *Thaddues-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (stating that an argument not raised in the initial brief is waived). Second, we fail to see how plaintiff was injured by this temporary oversight. In Maximus's denial letter, plaintiff was informed that his claim is properly categorized as a grievance. Despite this notification, plaintiff did not elect to proceed through the established grievance framework, but rather continued to appeal the denial of his claim through channels reserved for appeal of administrative decisions. He was also informed of other mechanisms of redress, such as the Health Plan Quality Complaint Process and the Quality Improvement Organization Complaint Process in Kaiser's initial notification of discontinuation.

Plaintiff offers two theories as to why the district court had jurisdiction over the instant suit, notwithstanding the clear language of § 405. First, he argues that he held a "property interest" in 100 days of continuous SNF care. This property right "vested," plaintiff claims, upon Dr. Ushavani's recommendation that Giesse receive such care. He further argues that once this interest vested, the burden shifted to Kaiser to provide evidence that he no longer needed daily SNF therapy. Plaintiff states that the subsequent deprivation of his property interest, without adequate due process, amounted to a constitutional violation under *Cleveland Board of Education v. Loudermill*, 470 U.S. 532, 538 (1985). As this deprivation amounted to a constitutional violation, any claim for redress is "wholly collateral" to a claim for Medicare benefits, and therefore does not "arise under" the Medicare Act, sidestepping § 405(h), and permitting judicial review.

This argument is flawed at the outset, insofar as it presupposes that plaintiff has a vested "property right" in 100 days of post-hospital SNF nursing care. This view is apparently based on the language of 42 U.S.C. § 1395d(a)(2)(A), which states:

(a) Entitlement to payment for inpatient hospital services, post-hospital extended care services, home health services and hospice care.

The benefits provided to an individual by the insurance program under this part shall consist of entitlement to have payment made on his behalf or, in the case of payments referred to in section 1395f(d)(2) of this title 1814(d)(2) to him (subject to the provisions of this part) for –

* * *

(2)(A) post-hospital extended care services for up to 100 days during any spell of illness . . . .

We have, however, interpreted this statute as stating the opposite of what plaintiff purports it to say. Indeed, in *Himmler v. Califano*, 611 F.2d 137, 145 (6th Cir. 1979), we noted that "[t]he Medicare Program . . . does not directly provide any entitlement to the medical services themselves." Moreover, the language of the statute only provides that a enrollee may receive *up to* 100 days of post-hospital extended care. Even after a physician initially certifies that an enrollee requires SNF care, recertification is required on the fourteenth day of such care and at every thirty days thereafter. 42 C.F.R. § 424.20(c)-(d).

Plaintiff responds that *Himmler* is no longer good law, as it has been overturned by *American Manufacturers Mutual Insurance Co. v. Sullivan*, 526 U.S. 40 (1999). However, Giesse offers no explanation as to why *American Manufacturers*, which concerns worker's compensation benefits, is relevant to the instant case. Indeed, *American Manufacturers* is useful insofar as the Court held that the plaintiffs in that case did not have a property interest in medical benefits. *Id.* at 61.

Giesse also contends that Congress "overturned" *Himmler* by enacting 42 U.S.C. § 1395w-22(g)(1)(A). This statute states, in relevant part, that a "Medicare+Choice organization shall have a procedure for making determinations regarding whether an individual . . . is entitled to receive a

health service under this section and the amount (if any) that the individual is required to pay with respect to such service." Plaintiff similarly does not elaborate on why this statute nullifies the holding of *Himmler*, but we assume it is because the above language could be read as suggesting that an enrollee has an entitlement, and thus a property right, in receiving medical care. The above language actually undercuts plaintiff's entitlement argument, as it demonstrates that even if there is an entitlement to services, this entitlement can be as little as a few (or no) days, rather than an automatic grant of the 100-day maximum allowed under 42 U.S.C. § 1395d(a)(2)(A), as plaintiff contends. Without a property interest in 100 days of medical care, plaintiff cannot claim that he suffered a constitutional deprivation, eliminating any claim of a *Loudermill* violation.

III.

Plaintiff alternatively argues that the Supreme Court's holding in *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), provides for judicial review of his claim. "Under the narrow reading of *Bowen v. Michigan Academy of Family Physicians*, 476 U.S. 667 (1986), adopted in *Shalala v. Illinois Council on Long Term Care, Inc.*, 529 U.S. 1 (2000), parties affected by Medicare administrative determinations may sue in federal court under 28 U.S.C. § 1331, bypassing § 405 preclusion, only where requiring agency review pursuant to § 405(h) 'would mean no review at all.'" *BP Care, Inc. v. Thompson*, 398 F.3d 503, 508 (6th Cir 2005) (citing *Illinois Council*, 529 U.S. at 19). This exemption, however, should not serve to circumvent established mechanisms of judicial review. In determining whether the *Michigan Academy* exception applies to a particular case, this court "must examine whether [the plaintiff] is simply being required to seek review first through the agency or is being denied altogether the opportunity for judicial review." *Cathedral Rock of North College Hill, Inc. v. Shalala*, 223 F.3d 354, 361 (6th Cir. 2000) (citing *Illinois Council*, 529 U.S. at 19). Plaintiff thus argues that if his claims are considered grievances, he is deprived of any judicial review of his claims, and the *Michigan Academy* exception is therefore triggered. We disagree.

*Michigan Academy* allows for plaintiffs to seek judicial review of their "challenges to the validity of the Secretary's instructions and regulations" when such claims would be otherwise barred under § 405(h). 476 U.S. at 680. Subsequent cases that involved similar statutory and regulatory Medicare challenges have likewise discussed the applicability of the *Michigan Academy* exception – which itself involved a challenge to a Medicare regulation – with varying results. *See, e.g., Illinois Council*, 529 U.S. at 5 (challenging various Medicare regulations as violative of the Constitution); *BP Care*, 398 F.3d at 506 (2005) (challenge to HHS's policy of imposing successor liability to monetary penalties); *Cathedral Rock*, 223 F.3d at 357 (challenging HHS determination that facility was not in compliance with program regulations). Here, by contrast, plaintiff does not challenge a rule or regulation, but rather seeks damages stemming from an alleged wrongful termination of care. Plaintiff had the option to appeal his administrative determination, which would either result in him obtaining relief in the form of reinstated medical care or in judicial review. It was only plaintiff's belief that reinstatement of care would be an inadequate remedy that places him outside the ambit of reviewable claims. We therefore cannot conclude that plaintiff was without judicial remedy. Indeed, plaintiff is deprived of judicial review to no greater extent than that of an injured claimant who, for one reason or another, fails to seek redress within the applicable statute of limitations period.

IV.

Giesse lastly contends that there is an implied right of action in the Medicare context under *Bivens*, 403 U.S. at 388. "*Bivens* established that the victims of a constitutional violation by a federal agent have a right to recover damages against the official in federal court despite the absence of any statute conferring such a right." *Carlson v. Green*, 446 U.S. 14, 18 (1980). The Supreme Court, however, has noted that the absence of a statutory remedy for a constitutional violation does

not imply that courts should award monetary damages, and has cautioned lower courts against extending *Bivens* into new contexts. *Schweiker v. Chilicky*, 487 U.S. 412, 421-22 (1988). In *Schweiker*, the Court refused to extend a *Bivens* claim to a Social Security beneficiary who had been denied benefits wrongly. Although the benefits were restored eventually, the beneficiary suffered injury beyond the amount he lost in benefits. In refusing to recognize *Bivens* as a remedy for alleged constitutional violations in the mishandling of Social Security claims, the Court acknowledged that doing so would deprive claimants of complete relief in situations where they had been wrongly denied benefits. *Id.* at 428-29 (citing *Bush v. Lucas*, 462 U.S. 367 (1983)). Nevertheless, the Court noted that *Bivens* was unsuited to instances where Congress had already provided "meaningful safeguards or remedies for the rights of persons . . . ." *Id.* at 425.

We have not addressed whether *Bivens* provides an implied right of action in the Medicare context. The Fifth Circuit, however, has held that no such remedy exists in the present context. In *Marsaw v. Thompson*, 133 F. App'x 946 (5th Cir. 2005), the court addressed whether a plaintiff who alleged due process violations and state claims satisfied his jurisdictional burden when his Medicare claims were denied during administrative review. The court reasoned that it "will not imply a *Bivens* remedy for an alleged constitutional violation in the denial of Medicare Act reimbursements, because Congress created a comprehensive statutory administrative review mechanism, which was intended fully to address the problems created by wrongful denial of Medicare reimbursements." *Id.* at 948. *See also Kaiser v. Blue Cross of California*, 347 F.3d 1107, 1117 (9th Cir. 2003) (noting that *Bivens* claim is unavailable in Medicare context). A *Bivens* remedy is likewise unwarranted in the present case, as the Medicare Act has provided a mechanism to address claims of wrongful denials of benefits and provided a remedy in the form of reinstatement of that care.

V.

For these reasons, we affirm the judgment of the district court.

---

**CONCURRENCE**

---

MERRITT, Circuit Judge, concurring.  I am having trouble making sense of plaintiff's claims.  Although I hesitate to rest our judgment on a lack of subject matter jurisdiction, I agree with the Court that the plaintiff has not stated a valid *federal* cause of action under any theory presented in his complaint.  Giesse did not seek reinstatement of skilled nursing care services, as required procedurally by the controlling statute — only damages.  He has not exhausted his federal administrative remedies against the Secretary of Health and Human Services, and there has been no final administrative decision by an agency of the United States Government for us to review.  So there is no valid administrative law claim.  Neither does plaintiff have an independent private *federal* cause of action created by federal statute, nor a "property right" abridged without due process of law which would give rise to a federal constitutional claim.  The problem with the plaintiff's federal action is that he cannot find any federal statute that would give rise to a Medicare action for damages, nor a federal constitutional theory that would give rise to a direct action in federal court for a constitutional tort based on the failure of the private defendants to allow Giesse to remain in the nursing home after July 2003.

Plaintiff waived oral argument in this case and, therefore, did not take advantage of the opportunity we provide parties to develop and clarify their arguments in a dialogue with the members of the Court.  Giesse's arguments are confusing, and perhaps we could have made more sense of them if we could have asked counsel a few questions at an oral argument.

———————————

**DISSENT**

———————————

R. GUY COLE, JR., Circuit Judge, dissenting. The majority concludes that because Giesse did not seek either reinstatement of medical services or reimbursement for payments made to maintain such medical services, his challenge was properly classified as a "grievance" and not as an appeal of an "organization determination." I disagree.

Under the Medicare program at issue here, an appeal refers to "any of the procedures that deal with the review of adverse organization determinations on the health care services." 42 C.F.R. § 422.561. "Organization determinations" include, *inter alia*, decisions made by an M+C organization (here, Kaiser) with respect to "[p]ayment for any other health services furnished by a provider other than the [M+C] organization that the enrollee believes . . . should have been furnished, arranged for, or reimbursed by the [M+C] organization." 42 C.F.R. § 422.566(b)(2)(ii). Giesse's challenge to Kaiser's termination of skilled nursing treatment included a request for compensation for payments made by him to Brookside Estates for services that he believed should have been furnished, or at least paid for, by Kaiser. Although Giesse requested other forms of relief that may not be available under Medicare, his claim that Kaiser refused to provide services that he believed should have been provided and his request for reimbursement of payments made to Brookside Estates, are exactly the kind of complaints that call for an "organization determination."

Kaiser's definitions of "appeal" and "grievance" support this categorization:

> Appeal – A type of complaint you make when you want us to reconsider and change a decision we have made about what services are covered for you or what we will pay for a service.

> Grievance – Any written complaint or dispute other than one involving your request for us to reconsider and change a decision we have made about what services are covered for you or what we will pay for a service. Examples of complaints that will be resolved through the Grievance process are waiting times in physician offices; rudeness or unresponsiveness of [Kaiser] staff.

(Joint Appendix ("JA") 410, 412.) Waiting times and customer service complaints are, therefore, entirely different from complaints about the termination of care and the reimbursement of payments made to another nursing facility; the former are grievances and the latter are complaints that require an organization determination.

Kaiser made such an "organization determination" in this case when it denied Giesse's challenge. Significantly, after its denial, Kaiser directed Giesse's complaint through the appeal process, which is reserved for disputes that have resulted in an "organization determination." On review of this appeal, Maximus, without further explanation, provided: "We are dismissing your case. Your complaint is not a valid appeal for medical coverage. Your complaint is a grievance that must be answered by your Health Plan." Although Giesse's challenge may not have included an "appeal for medical coverage," it did include an appeal for "[p]ayment for any other health services furnished by a provider other than the [M+C] organization that the enrollee believes . . . should have been furnished, arranged for, or reimbursed by the [M+C] organization." 42 C.F.R. § 422.566(b)(2)(ii). Kaiser's denial of this request is an organization determination subject to appeal, notwithstanding Maximus's erroneous categorization.

Indeed, after the ALJ dismissed Giesse's challenge, on the basis of Maximus's categorization of the complaint, and the challenge proceeded to the Center for Medicare & Medicaid Services within the Department of Health and Human Services, the Department questioned why Maximus labeled Giesse's request for reconsideration as a grievance:

> Although we recognize that much of the relief being sought by the appellant was outside of [Maximus's] purview to act upon (e.g., interest, attorney's fees, compensation for distress sale of personal residence), we question why [Maximus] did not make a determination of the appropriateness of [Kaiser's] decision to terminate coverage of the daily inpatient SNF benefits as of 8/1/2003. *This seems to be the exact kind of SNF termination issue that [Maximus] frequently used to review.*

(JA 177; emphasis added.)

Giesse's prayer for relief included a request for payment for services provided by Brookside Estates, which Giesse believed should have been furnished or reimbursed by Kaiser. Kaiser's decision related to this request is an "organizational determination" that is subject to the Medicare appellate process. I would, therefore, reverse the district court's judgment and remand for an administrative hearing.