Blair G. McLACHLAN, Plaintiff–
Appellant,

v.

James BELL; Michael George;
Charles Smith, Defendants–
Appellees.

No. 99–16037.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 14, 2000

Filed Aug. 20, 2001

Jonathan Jackel, San Jose, California, for the appellant.

Neal A. Rubin, Assistant U.S. Attorney, San Jose, California, for the appellees.

Before: KLEINFELD, HAWKINS, and TALLMAN, Circuit Judges.

KLEINFELD, Circuit Judge:

This is a Federal Tort Claims Act case raising the question of whether a certification by the United States Attorney under the Westfall Act[1] was proper under California scope of employment law.

## FACTS

This case was dismissed for lack of subject matter jurisdiction on a motion pursuant to Federal Rule of Civil Procedure 12(b)(1). Declarations were submitted on both sides, as well as the complaint, but the district judge held no evidentiary hearing. Because no evidentiary hearing was held, we accept as true the factual allegations in the complaint.[2]

Blair McLachlan is an aeronautical engineer, with a doctorate from Stanford. He worked at all relevant times at the Ames Research Center for the National Aeronautic and Space Administration. Against

---

1. 28 U.S.C. § 2679 (2001).

2. *See GATX/Airlog Co. v. United States,* 234 F.3d 1089, 1093 (9th Cir.2000).

considerable skepticism, he developed a new concept called "pressure sensitive paint" and researched its practical applications. He ultimately won a prestigious award after his novel concept turned out to be successful, and a new industry developed around it, but his success caused professional jealousies. A person hired to work under him on the pressure sensitive paint team, James Bell, was insubordinate in important respects. Most importantly, Dr. Bell refused to obey Dr. McLachlan's express directions to test a software program for Boeing and NASA, and the software failed. Yet when Dr. McLachlan complained to his supervisor, Michael George, about Dr. Bell, Mr. George refused to support Dr. McLachlan.

In his job performance plan, Dr. McLachlan asked Mr. George that he be relieved of responsibility for Dr. Bell's software. Acrimony developed between Dr. McLachlan and Mr. George about this personnel dispute, culminating in two meetings between Dr. McLachlan and Mr. George. Before the meetings, someone, whom Dr. McLachlan thinks was Dr. Bell, had suggested to Mr. George, without any basis, that Dr. McLachlan might become violent during the meetings. Mr. George, with the approval of the third defendant, his superior Dr. Charles Smith, arranged to have security guards available if he gave a certain signal, though they were not visible during the meetings. At the meeting, Dr. McLachlan did not say or do anything giving rise to a need for security, and the guards were not called, but Mr. George was loud, abusive, and provocative.

Some months later, Dr. McLachlan found out about the arrangement with security, and discovered that many other people at the research center knew about it, causing him humiliation and embarrassment. Meanwhile, Mr. George had removed Dr. McLachlan from the pressure sensitive paint team even though Dr. McLachlan had invented the concept, and replaced him with Dr. Bell.

Dr. McLachlan sued Dr. Bell, Mr. George, and Dr. Smith in the Superior Court of the State of California for defamation, intentional interference with prospective economic advantage, and intentional infliction of emotional distress. Though Dr. McLachlan did not sue the United States, the United States Attorney certified that all three defendants were acting within the scope of their employment and removed the case to federal district court, thereby requiring that the United States be substituted as defendant for Dr. Bell, Mr. George and Dr. Smith.[3] Dr. McLachlan moved to remand the case back to state court, challenging the United States Attorney's certification. The district court denied the motion to remand and granted the motion to dismiss.

## ANALYSIS

■ We review the dismissal under Federal Rule of Civil Procedure 12(b)(1) and the denial of the challenge to certification de novo.[4]

■ Dr. McLachlan argues that the district court ought to have granted him an evidentiary hearing to resolve the differences between his account and those of Dr. Bell, Mr. George and Dr. Smith. We review the decision whether to conduct an evidentiary hearing for abuse of discretion.[5] There is none here, because even viewing the evidence in the light most favorable to Dr. McLachlan and accepting

---

3. 28 U.S.C. § 2679(d) (2001).

4. See Marlys Bear Medicine v. United States, 241 F.3d 1208, 1213 (9th Cir.2001).

5. See United States v. Smith, 155 F.3d 1051, 1063 n. 18 (9th Cir.1998), cert. denied, 525 U.S. 1071, 119 S.Ct. 804, 142 L.Ed.2d 664 (1999).

his version of events, dismissal was appropriate.

■ The only substantial issue in the case is whether certification was proper. If Dr. Bell, Mr. George and Dr. Smith acted within the scope of their employment, then certification was proper. We review a Westfall Act scope of employment determination de novo.[6] We apply respondeat superior principles of state law.[7] All the conduct at issue in this case took place at the Ames Research Center in Mountain View, California, so California law controls on the scope of employment question.

■ The California Supreme Court, applying its state tort claims act, has stated that "the scope of employment has been interpreted broadly under the respondeat superior doctrine."[8] Foreseeability suffices for conduct to be within the scope if it "is not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."[9] No "nice inquiry" is made as to whether the employee was engaged in the ultimate object of his employment where he combines his personal business with his employer's, unless it is clear that "neither directly nor indirectly could he have been serving his employer."[10] Even

"willful and malicious torts of an employee" can be within the scope of his employment, and that may be so even where the employee's torts violate the employer's express rules and confer no benefit on the employer.[11] Thus, for example, torts have been found to be within the scope of employment where an employed truck driver beat a motorist with a wrench,[12] a traveling salesman beat a motorist with whom he had a near-accident,[13] and a contractor's employee threw a hammer at a subcontractor.[14]

■ There is an exception, applying to acts, which though done at the employer's place of business, substantially deviate from employment duties for personal purposes, and the torts are personal in nature.[15] The cases that California has classified within this exception seem most often to involve sex in some way. For example, the owner of a bar is not vicariously liable where a bartender hits someone in the course of fighting with his wife,[16] and a county is not vicariously liable for a deputy sheriff who engages in unconsensual sexual conduct with other deputy sheriffs.[17] But even sexual misconduct can be within the scope of employment for purposes of respondeat superior, as when a

**6.** *See Gutierrez de Martinez v. Lamagno*, 515 U.S. 417, 420, 115 S.Ct. 2227, 132 L.Ed.2d 375 (1995); *Clamor v. United States*, 240 F.3d 1215, 1216–17 (9th Cir.2001).

**7.** *See Clamor*, 240 F.3d at 1217; *Wilson v. Drake*, 87 F.3d 1073, 1076 (9th Cir.1996); *Pelletier v. Fed. Home Loan Bank*, 968 F.2d 865, 876 (9th Cir.1992).

**8.** *Farmers Ins. Group v. County of Santa Clara*, 11 Cal.4th 992, 47 Cal.Rptr.2d 478, 486, 906 P.2d 440, 448 (1995).

**9.** *Id.*

**10.** *Id.*

**11.** *Id.* 47 Cal.Rptr.2d at 486–87, 906 P.2d at 448–49.

**12.** *See Fields v. Sanders*, 29 Cal.2d 834, 180 P.2d 684, 687–89 (1947).

**13.** *See Pritchard v. Gilbert*, 107 Cal.App.2d 1, 236 P.2d 412, 413–14 (1951).

**14.** *See Carr v. Wm. C. Crowell Co.*, 28 Cal.2d 652, 171 P.2d 5, 6–7 (1946).

**15.** *See Farmers Ins. Group*, 47 Cal.Rptr.2d at 478, 906 P.2d at 440.

**16.** *See Monty v. Orlandi*, 169 Cal.App.2d 620, 337 P.2d 861, 863–64 (1959).

**17.** *See Farmers Ins. Group*, 47 Cal.Rptr.2d at 482, 906 P.2d at 444.

police officer rapes a civilian whom he stopped for a traffic violation.[18]

██ Under the broad California doctrine, the conduct of all three defendants was within the scope of their employment. All three acted foreseeably, in the sense that their conduct was "not so unusual or startling that it would seem unfair to include the loss resulting from it among other costs of the employer's business."[19] There is unfortunately nothing "unusual or startling" about personal hostility, backbiting, resentment of another's success, false rumors, and malicious gossip in the workplace. Even assuming that Dr. Bell acted entirely out of malice because he resented Dr. McLachlan's well taken criticism of him for not testing the software he developed, that Mr. George acted out of malice, and that Dr. Smith acted out of carelessness, the entire affair took place at work, in ways relating to work, on issues arising out of the work all of them did for NASA. Even if the entire imbroglio arose out of willful and malicious defamation by Dr. Bell against Dr. McLachlan, as Dr. McLachlan's papers claim, California has nevertheless expressly stated that "willful and malicious torts of an employee" may still be within the scope of his employment for purposes of vicarious liability.[20] Dr. McLachlan offers some workers' compensation cases that suggest a narrower criterion, but they are neither so clearly on point, nor as plain in their implications for this case, as the California Tort Claims Act cases.

Ordinarily a holding that conduct is within the scope of employment has the consequence that an injured plaintiff can, as a practical matter, recover against a defendant that is not judgment-proof. Here it has the opposite consequence. Because the Federal Tort Claims Act excepts from the waiver of sovereign immunity "libel" and "slander,"[21] treating the defamation claims as within the scope of employment eliminates them. But this result makes no difference to application of the law on scope of employment.

As for the other claims, the district court correctly dismissed them because they had not been presented to the appropriate federal agency for disposition, as required by the Federal Tort Claims Act.[22]

## CONCLUSION

The certification by the United States Attorney was correct because all three defendants' conduct fell within the scope of their employment under California law. The 12(b)(1) dismissal was therefore appropriate.

AFFIRMED.

---

**18.** *See Mary M. v. City of Los Angeles,* 54 Cal.3d 202, 285 Cal.Rptr. 99, 100, 814 P.2d 1341, 1342 (1991).

**19.** *Farmers Ins. Group,* 47 Cal.Rptr.2d at 486, 906 P.2d at 448.

**20.** *Id.*

**21.** 28 U.S.C. § 2680(h) (2001).

**22.** 28 U.S.C. § 2675(a). The Westfall Act extends the time for presentation where a claim is dismissed on this ground. 28 U.S.C. § 2679(d)(5).