*120 MEMORANDUM OPINION AND ORDER FOLLOWING HEARING ON DEFENDANTS’ MOTION TO DISMISS
EDMUND CLAY GOODMAN, Chief Judge.
A. BACKGROUND; INTRODUCTION
Plaintiff Marvin Kimsey filed this action alleging that the Defendant, Jan Reibach, slandered and defamed him by making public statements suggesting that Mr. Kimsey was a homosexual,[1] Mr, Kim-sey alleges that Mr. Reibach caused him “per se and actual damages under the *121 custom and tradition of tribal law” and that Mr. Reibach has negligently and intentionally inflicted emotional distress upon him. Mr. Kimsey also named “Jane Doe” Reibach—the wife of Mr. Reibaeh— as an additional respondent, alleging that she is part of the marital community liable in this action.
On March 21, 2005, Mr. Reibach, appearing pro se, filed a combined answer and motion to dismiss. In that document, Mr. Reibach first answers the complaint by denying that he made the statements alleged. Mr. Reibach then moves to dismiss the complaint as to his wife, Tawnya Reibach, noting that Mr. Kimsey has not alleged that Ms. Reibach herself has caused him any injury. Mr. Reibach also asserts that Ms. Reibach is not a Tribal member, not an employee of the Tribe, and does not reside on the Tribe’s Reservation lands, and that therefore the Court lacks personal jurisdiction over her. Finally, Mr. Reibach moves to dismiss the Complaint as to the claims against him, asserting that even if he had made the statements alleged, they are not actionable under Tribal law, asserting that there are “no Tribal laws that condemn saying that someone is ‘gay’ or ‘having a boyfriend’, etc., in a private conversation.” Mr. Rei-bach also asserts that the Court should refuse to hear the case under the Tribal Court Ordinance provision that authorizes the Court to decline to hear the case if it “is of such a nature that the Court should not hear it.” Tribal Code, § 310(d)(l)(A)(3). Mr. Reibach finally asserts that the provisions of the Tribal Constitution and the Indian Civil Rights Act protecting freedom of speech prohibit this action.
Oral argument on the motion to dismiss was held on May 6, 2005. As a number of the issues were matters of first impression for the Court, the parties were asked to submit additional briefing on some of the legal issues discussed at the hearing.
Having considered the arguments made in the briefs and at the hearing, I have determined that the Court lacks subject matter jurisdiction to hear an action sounding in tort between two private individuals because the Tribe has not enacted an Ordinance specifically delegating jurisdiction over such actions to the Tribal Court. Moreover, in the alternative, I also hold that even if this Court had subject matter jurisdiction to hear such an action, this case is “of such a nature that the Court should not hear it.” It would not be appropriate for this Court to adjudicate the complicated issues involved in such a case in the absence of Tribally-enacted standards for addressing such issues.
B. ISSUES DISCUSSED
1. Does the Tribal Court have subject matter jurisdiction to adjudicate claims regarding torts allegedly committed by private persons?
2. Should the Tribal Court dismiss the claim as a “case [that] is of such a nature that the Court should not hear it?”
C. DISCUSSION
1. Standard for Analyzing Motions to Dismiss
The Court has adopted the Federal Rules of Civil Procedure as its rules of procedure and has generally been guided by the decisions of the federal courts on the interpretations of those rales. See Kalantari v. Spirit Mountain Gaming Inc., Case No. C-02-09-004, Order Denying Motion to Amend Discovery Order (July 31, 2003), at p. 4. Mr. Reibaeh does not identify the provision of the Federal Rules upon which his motion is based. Based on the claims asserted by Mr. Rei-bach, the Court will treat Mr. Reibach’s *122 motion as a combined FRCP 12(b)(1) motion to dismiss for lack of jurisdiction over the subject matter and an FRCP 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Consistent with well-established precedent in dealing with such motions, the Court will construe the complaint liberally and will presume, for the purposes of the motions only, that all the allegations of the complaint are true and will draw any inferences in favor of the Plaintiff. See, e.g., McLachlan v. Bell, 261 F.3d 908, 909 (9th Cir.2001) (where attack on subject matter jurisdiction is “facial” rather than “factual,” these presumptions—normally applied in a failure to state a claim challenge—are applicable). Nonetheless, when faced with a jurisdictional challenge, the Plaintiff bears the burden of establishing jurisdiction. See, e.g., Tosco Corp. v. Communities for a Better Environment, 236 F.3d 495, 499 (9th Cir.2001).
2. The Court Lacks Subject Matter Jurisdiction Over Defamation Actions Arising In Tort Between Two Private Parties
At oral argument, Mr. Reibach asserted that the Court lacked subject matter jurisdiction because the Grand Ronde Tribal Court could only hear those types of cases that the Tribal Council had specifically granted the Court the jurisdiction to hear, and that the Tribal Council had not granted the Court the jurisdiction to hear defamation actions sounding in tort between two private parties. Mr. Kimsey asserts in response that the Tribal Court, per the expansive language in the subject matter jurisdiction provision of the Tribal Court. Ordinance, Tribal Code § 310(d)(1), is a court of general jurisdiction and has subject matter jurisdiction to hear any civil action brought before it. I have reviewed the published decisions of the Grand Ronde Tribal Court, and this question appears to be a matter of first impression.
To resolve questions regarding the jurisdiction of the Tribal Court, we must first look to the Tribal Constitution, which states, in relevant part, as follows:
The Tribal Court shall be empowered to exercise all judicial authority of the Tribe. Said authority shall include but not be limited to enforcement of the Indian Child Welfare Act of 1978 and the American Indian Religious Freedom Act of 1978, as well as the power to review and overturn tribal legislative and executive actions for violation of this Constitution or the Indian Civil Rights Act of 1968.
Tribal Constitution, Art. IV, Sec. 3 (emphasis added). This provision of the Constitution provides that the Court is to be granted certain judicial authority by the Tribal Council, making clear that the under the Constitution the Court is to be granted certain powers, and therefore is a court of limited jurisdiction. While this provision indicates that any judicial authority of the Tribe must be exercised by the Court, this does not mean that the Court is granted general jurisdiction over all civil actions. The language prohibits the Council from granting judicial authority to any Tribal institution other than the Tribal Court, but it does not require that the Court be granted general jurisdictional authority.
Mr. Kimsey cites to § 710(d)(1)(A) of the Tribal Court Ordinance as demonstrating that the Tribe has granted the Court such general jurisdictional authority. On an initial read through, the language of this provision might appear to support Mr. Kimsey’s position. Looking at the history of this provision is necessary for addressing this question.
Prior to 1998, this provision read as follows:
*123 The Court shall have civil jurisdiction over the following matters: child custody proceedings; appeals from denials of hunting, fishing, or gathering privileges by the Fish and Wildlife Committee, appeals from appealable decisions of the Education Committee, appeals from decisions of peacemakers and issues delegated to the Court by Ordinance.
(Emphasis added). Such language expressly indicates that the Tribe’s intent was to have the Court function as a court of limited jurisdiction, particularly in light of the highlighted clause, with any additional jurisdictional authority to be expressly delegated by Ordinance.
In the years prior to 1998, the Tribe treated the Court as a court of limited jurisdiction, enacting a series of Ordinances granting the Tribal Court jurisdiction over specific subject matters. See, e.g., Divorce Ordinance (no Tribal Code Section assigned), part (a) (“The purpose of this Ordinance is to grant authority to the Tribal Court to dissolve marriages”); Enrollment Ordinance, Tribal Code § 410(d)(4)(H) (granting limited authority to Tribal Court to hear appeals of adverse enrollment determinations); Indian Child Welfare Ordinance, § 710(c) (“The jurisdiction of the Tribe shall extend to child welfare matters involving all Grand Ronde children, wherever located”); Liquor Ordinance, § 760(g) (establishing civil penalties and specifically providing for their enforcement in Tribal Court for violation of the Ordinance); Small Claims Court Ordinance (no Tribal Code Section assigned), part (a) (“The purpose of this Ordinance is to grant authority to the Tribal Court to adjudicate over matters involving small claims”).
In 1998, however, the Tribal Council significantly amended this provision of the Tribal Court Ordinance. Tribal Council
Resolution 089-98. The provision now reads as follows:
The Court shall have jurisdiction over all civil actions where there are sufficient contacts with the Grand Ronde Reservation upon which to base jurisdiction, consistent with the Constitution and laws of the Tribe and the United States. It is the intent of this paragraph to authorize the broadest exercise of jurisdiction consistent with these limitations. Without limiting the foregoing, the Court shall have jurisdiction over the following matters: proceedings involving the Tribe’s custody of children; contracts to which the Tribe is a party; appeals from denials of hunting, fishing, or gathering privileges by the Fish and Wildlife Committee, appeals from appealable decisions of the Education Committee, appeals from decisions of peacemakers and issues delegated to the Court by Ordinance.
Tribal Code, § 310(d)(1)(A) (emphasis added). The plain language of the first two sentences of this provision, newly added through this amendment, might appear at first blush to indicate the Tribe’s intent to grant general civil jurisdictional authority to the Tribal Court.
This language does not carry the weight that Mr. Kimsey assigns to it, however. The broad grant of jurisdiction in the first clause of the first sentence is limited by the second clause, which is that such jurisdiction must be consistent with the Constitution and lawrs of the Tribe. The broad language of the first and second sentences cited above indicates the Tribe’s intent that once jurisdiction over a particular subject matter is delegated to the Court, such jurisdiction shall be as broad as possible. The remaining language of the provision, however, indicates that the Tribe still intends that the Court’s jurisdiction be expanded by specific, individual enactments. This language in fact contains a *124 new delegation oi' jurisdictional authority over “contracts to which the Tribe is a party,” language which would not be necessary if the first two sentences were a grant of a blanket jurisdictional authority. Moreover, the Tribe chose to retain the highlighted clause, indicating that the Tribe still intends that jurisdiction over specific subject matter areas be delegated ordinance by ordinance.
Further, since 1998 the Tribe’s practice of expressly granting the Court jurisdiction over specific subject matter areas has not changed. In 2002, for example, the Tribe enacted the Public Safety Ordinance (no Tribal Code Section assigned). Sub-part (j) of that Ordinance contains a specific and express grant of jurisdiction to the Tribal Court to hear cases arising under that Ordinance.
This Court will follow the longstanding judicial presumption (applied across numerous jurisdictions) that a legislative body is aware of its prior legislative enactments and that its subsequent enactments should be read harmoniously with the prior enactments as part of a general and uniform scheme of jurisprudence. See, e.g., Utah v. Babbitt, 53 F.3d 1145, 1149 (10th.Cir.1995) (“[w]e construe a statutory term so that it ‘fits most logically and comfortably into the body of both previously and subsequently enacted law’ ”) (quoting W.Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 100-01, 111 S.Ct. 1138, 113 L.Ed.2d 68 (1991)); Keller v. Merrick, 955 P.2d 876, 879 (Wyo.1998).
Further, and consistent with these principles, the Court should not interpret provisions within a statutory scheme in such a way as to render them “ambiguous, extraneous, or redundant.” In re Merchant Grain, Inc., 93 F.3d 1347, 1353-54 (7th Cir,1996). If the Court were to interpret the 1998 amendments to Tribal Code § 310(d)(1)(A) as a blanket grant of subject matter jurisdiction over any and all civil actions, such an interpretation would render extraneous and redundant the language the Tribe also added to this provision regarding contract disputes, as well as the language it kept regarding “issues delegated by Ordinance.” Likewise, if § 710(d)(1)(A) was read as a blanket grant of jurisdiction over all civil matters, the jurisdictional provisions of the subsequently enacted Public Safety Ordinance would be rendered superfluous.
I therefore determine that in order to have jurisdiction over a defamation action arising in tort between two private individuals, there must be an Ordinance or other statutory enactment of the Tribal Council granting the Court specific jurisdiction to hear such matters and setting out the standards by which such matters should be adjudicated. A review of the Tribal Code indicates that there is no such Ordinance or statutory enactment. In the absence of such an enactment, I determine that this Court lacks the subject matter jurisdiction necessary to hear this case.
3. The Case is “of Such a Nature that the Court Should not Hear It.”
In the alternative, I find also that even if an express grant of subject matter jurisdiction is not required, this case is “of such a nature that the Court should not hear it.” Exercising the discretion granted under Tribal Code § 310(d)(1)(A)(3), I would dismiss this case on this alternate ground as well. The problem for the Court is again with the lack of a specific enactment to guide the Court as to the standards to be applied in adjudicating such matters.
The fact that the parties so radically disagree as to whether the alleged statements of Mr. Reibach violate Tribal law, *125 whether Tribal law allows for actions of slander per se, and whether such torts may be brought against a “marital community” underscore the necessity of having a specific tribal enactment setting out the standards for adjudicating such actions. Because there is nowhere to look in Tribal law for such standards, we are left with arguments based on the laws of the State of Oregon, the common law, and even reference to the works of William Shakespeare.[2] To move forward in the absence of Tribal standards would be to construe such absence as leaving it to the Court’s sole discretion to import the laws of foreign jurisdictions to govern the relations between individuals within the Tribe’s jurisdiction. I believe it is inappropriate to do so, as it would place the Court in the role of legislating such standards. That legislative role belongs to the Tribal Council.
Compare this lack of standards to govern the kind of tort asserted in this case with what the Tribe has done with regard to tort claims against the Tribal government and its officers and officials. The Tribe’s Tort Claims Ordinance specifically grants the Tribal Court subject matter jurisdiction over certain tort claims against the Tribe, its agents, officials, and officers. Tribal Code § 255.6. Moreover, that Ordinance defines “injury” for the purposes of adjudicating a tort action by reference to not only Tribal law, but also to “applicable federal law, and, to the extent consistent with Tribal law, laws of the State of Oregon....” Tribal Code § 255.6(b)(3). Fur-flier, the Ordinance expressly excludes injuries alleged to have resulted from “Any intentional tort, including but not limited to ... libel, slander, defamation-” Tribal Code § 255.6(e)(4)(C). The Ordinance sets out a specific grant of jurisdiction as well as the standards under which such claims are to be adjudicated. The Tribe has not enaeted a similar Ordinance for tort claims between private individuals, and the Tribal Tort Claims Ordinance does not apply to such claims.
Given the complexity of the issues raised by the present case, and the risk of importing inappropriate norms to govern the relations between individuals within the jurisdiction of the Tribe, the Court determines that it would be appropriate to refuse to exercise jurisdiction to hear this case. This exercise of discretion to dismiss does not deprive Mr. Kimsey of a remedy, if indeed he has been harmed by Mr. Reibach’s alleged statements. As his counsel has argued, the laws of the State of Oregon appear to provide him with a cause of action. Because Oregon is a Public Law 280 state, and because Public Law 280 grants the state courts jurisdiction over civil causes of action that arise on tribal land, Mr. Kimsey would not appear to be precluded from bringing this action in State court.
D. CONCLUSION
The Court is dismissing this action on the grounds of lack of subject matter jurisdiction and, in the alternative, as a case *126 that is inappropriate to be heard by this Court. As a result, the Court need not reach the questions raised as to the adequacy of the statement of the claim or of personal jurisdiction over Ms. Reibach as a member of the marital community, nor whether proceeding with this suit violates the Tribal Constitution or the Indian Civil Rights Act. Mr. Kimsey’s complaint will be dismissed in its entirety with prejudice. Because this is a matter of first impression for the Court and because the Complaint appears to have been filed in a good faith belief that the laws of the Tribe provided for such an action, the Court will not award any costs or attorney fees to Defendants.
THEREFORE, IT IS HEREBY ORDERED that,
1. Plaintiff Marvin Kimsey’s Complaint shall be dismissed in its entirety with prejudice.
2. Each party shall bear its own costs and attorney fees in this matter.

. In his Complaint and his other filings, Mr. Kimsey identifies himself as "Petitioner” and the Defendants as "Respondents.” Since this Court follows the Federal Court Rules of Civil Procedure for civil actions like this one, the nomenclature the Court uses is Plaintiff and Defendant. The caption and internal references have been corrected for the purposes of the orders and judgment issued in this ease. Petitioner and Respondent are used for certain cases brought before this Court under specific ordinances designating the use of such terms for the parties. See, e.g., Employment Action Review Ordinance, Tribal Code § 255.5.

. While the Court enjoyed Plaintiff's reference to the statement from Othello regarding the relative merits of reputation and riches, relying on the poets to address matters of the public good, as Plato repeatedly cautions in his Republic, is highly problematic. It is questionable, at best, to rely on a statement that a poet places in the in mouth of one of his characters as an indication of a matter of broader social significance, even with a poet as highly regarded and widely quoted as Shakespeare. One would have to, at a minimum, undertake a detailed literary and critical analysis to determine whether the statement was intended ironically, or as representing a minority view, rather than as a statement of an important social norm. Consider, for example, that the statement quoted by Mr. Kimsey is, in fact, a statement made by the play's villain, lago.