**AMAZON.COM, INC., Plaintiff,**

v.

**NATIONAL ASSOCIATION OF COLLEGE STORES, INC.,**
Defendant.

**Case No. C11–0754JLR.**

United States District Court,
W.D. Washington,
at Seattle.

Sept. 26, 2011.

Vanessa Soriano Power, Stoel Rives, Seattle, WA, Regan Smith, Thomas Jirgal, Loeb & Loeb, Chicago, IL, for Plaintiff.

Charles P. Rullman, III, Tim J. Filer, Foster Pepper LLC, Seattle, WA, Matthew M. Wright, Ralph A. Taylor, Jr., Arent Fox LLP, Washington, DC, for Defendant.

## ORDER DENYING DEFENDANT'S MOTION TO DISMISS

JAMES L. ROBART, District Judge.

This matter comes before the court on Defendant National Association of College Stores, Inc.'s ("NACS") motion to dismiss Plaintiff Amazon.com, Inc.'s ("Amazon") complaint pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure (Dkt. # 14). NACS contends that (1) the court lacks subject matter jurisdiction over Amazon's declaratory judgment complaint, and (2) the court lacks personal jurisdiction over NACS. (*Id.*) Amazon opposes NACS's motion. (Dkt. # 16.) Having reviewed the submissions of the parties, and deeming oral argument unnecessary, the court DENIES NACS's motion to dismiss.

## I. BACKGROUND

Amazon is a large online retailer that sells a broad range of merchandise, including college textbooks. (Compl. ¶ 9.) Recently, Amazon began to actively market the availability of new and used college textbooks and to offer to buy back used college textbooks. (*Id.*) Amazon is a Delaware corporation having its principal place of business in Seattle, Washington. (*Id.*)

NACS is a not-for-profit trade association representing the campus retailing industry. (Schlichenmayer Decl. (Dkt. # 15) ¶ 4.) It is headquartered in Oberlin, Ohio, and has branch offices in Washington, D.C., and Albany, New York. (*Id.* ¶ 6.) NACS's members include over 3,000 stores serving colleges, universities, and gradeschools in the United States, Canada, and

around the world; over 1,000 companies supplying goods and services to college stores; and higher education professionals, organizations, associations, and others interested in the industry. (*Id.* ¶ 3.) NACS serves as an advocate and resource for its members, but each member acts independently of NACS. (*Id.* ¶ 4.) Although NACS has members in Washington, including the University of Washington Bookstore (*see* Jirgal Decl. (Dkt. # 17) Ex. N), it is not licensed or registered to do business in Washington, and has no offices, property, bank accounts, telephone numbers, post office boxes, or employees in Washington. (Schlichenmayer Decl. ¶ 7.)

On February 2, 2011, NACS's general counsel sent a letter to Amazon expressing NACS's concern regarding "advertisements near college campuses for 'up to 30% off new textbooks at Amazon.'" (Jirgal Decl. Ex. A at 1.) NACS stated that its investigation had left it concerned that Amazon was selling its textbooks at a loss in order to "siphon" customers away from NACS member stores. (*Id.*) NACS also expressed its concern regarding the accuracy of Amazon's claim, and stated that it "would like to understand" the study of competitive prices that it assumed Amazon had completed before beginning to use the comparative advertising claim. (*Id.*) NACS closed by requesting that Amazon "review its textbook pricing and advertising policies" and stated that it would be "pleased to publicize [the explanation for Amazon's prices] to the NACS membership." (*Id.*) NACS warned, however, that if there was no reasonable explanation for Amazon's pricing claims, it would be "forced to pursue [its] investigation more aggressively," and that a "lack of documentation" regarding the study Amazon completed before making its 30% off claim "could justify initiation of a proceeding before the National Advertising Division

[of the Council of Better Business Bureaus]." (*Id.* at 1–2.)

Amazon responded in a letter dated February 18, 2011. (Jirgal Decl. Ex. B.) In its letter, Amazon stated that it "set[s] prices to match [its] competition-which of course, extends well beyond college stores." (*Id.*) Amazon also stated that it had substantiated its advertising to its satisfaction before beginning its campaign, but would not share any pricing or competitive information with NACS. (*Id.*)

On March 25, 2011, NACS initiated a challenge against Amazon's advertising claims before the National Advertising Division of the Council of Better Business Bureaus ("NAD"). (Jirgal Decl. Ex. C ("NAD Complaint").) Specifically, NACS contended that three specific advertising claims by Amazon relating to its purchase and sale of college textbooks were misleading and deceptive:

- "SAVE UP TO 90% ON USED TEXTBOOKS"
- "SAVE UP TO 30% ON NEW TEXTBOOKS," and
- "GET UP TO 60% BACK WHEN YOU SELL TEXTBOOKS BACK AT AMAZON."

(*Id.* at 2.) NACS stated in its NAD Complaint that it "believes it unlikely that Amazon is capable of providing substantiation for the claims made on [its] Site." (*Id.* at 3–12 (setting forth NACS's arguments regarding why it believes Amazon's claims are misleading, deceptive, and unsubstantiated).) NACS did not initiate or threaten to file a lawsuit against Amazon under any cause of action, including Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), which authorizes a civil suit against any person who makes a false or misleading representation in connection with goods or services. (*See id.*; Schlichenmayer Decl. ¶ 12.)

The NAD is a neutral arbiter of advertising disputes; it is responsible for "resolving complaints or questions from any source involving the truth or accuracy of national advertising." (*See* Jirgal Decl. Ex. E ("NAD Policies and Procedures") ¶ 2.1(A).) A concerned party initiates a proceeding before the NAD by filing a complaint. (*See id.* ¶ 2.2(B).) The advertiser may, within 15 days, submit a written response to the NAD providing substantiation for the challenged advertising claims or representations. (*See id.* ¶ 2.5.) The challenger may file a reply addressing the advertiser's response, and the advertiser may respond to that reply. (*See id.* ¶¶ 2.6, 2.7.) The NAD may then request additional information from the parties and may, in its discretion, meet with either or both parties. (*See id.* ¶ 2.8.) The NAD must issue its decision within 15 days of the last document or meeting. (*See id.* ¶ 2.9.)

An advertiser's compliance with the NAD's recommendations is nominally voluntary; there may, however, be consequences if the advertiser refuses to participate in the NAD proceeding or to comply with the NAD's recommendations. First, if the advertiser does not file a written response to the complaint, the NAD "shall release to the press and the public a 'notice' summarizing the advertising claims challenged in the complaint and noting the advertiser's failure to substantively respond." (*Id.* ¶ 2.1(A).) Further failure to respond may result in the NAD referring the file to the appropriate governmental agency and releasing information regarding the referral to the press, the public, and the media. (*Id.* ¶ 2.1(B).) Second, if the advertiser chooses not to participate in the proceeding, the NAD "shall prepare a review of the facts with relevant exhibits and forward them to the relevant federal or state law enforcement agency." (*Id.* ¶ 2.1(F)(iii).) Third, if the advertiser does

not respond to the NAD's decision, the NAD may refer the matter to an "appropriate governmental authority for review and possible law enforcement action." (*Id.* ¶ 2.9(B).) Finally, if the advertiser disagrees with the NAD's findings and refuses to comply with the recommended changes, the NAD may refer the matter to the appropriate governmental agency and report the referral to the press. (*Id.* ¶ 4.1.)

Amazon declined to participate in the NAD dispute resolution process. Instead, on May 3, 2011, Amazon filed the present action seeking a declaration that its use of the three advertising claims does not violate Section 43(a) of the Lanham Act. (Compl. ¶ 7.) Because the advertising claims are now the subject of pending litigation, the NAD discontinued its investigation. (*See* NAD Policies and Procedures ¶ 2.2; Schlichenmayer Decl. Ex. 4.) The day after Amazon filed its complaint in this action, NACS issued a press release publicizing its allegations that Amazon's advertising claims are "misleading and deceptive because their sales platform makes it virtually impossible to substantiate the advertised discounts" and that Amazon's "Get up to 60% back" claim is "deceptive because it is literally false." (Jirgal Decl. Ex. D.) NACS now moves to dismiss Amazon's complaint for declaratory relief for lack of subject matter jurisdiction and personal jurisdiction. (Mot. (Dkt. # 14).)

## II. ANALYSIS

### A. Subject Matter Jurisdiction

■■■ The burden of establishing subject matter jurisdiction rests upon the party asserting jurisdiction—here, Amazon. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377, 114 S.Ct. 1673, 128 L.Ed.2d 391 (1994). Rule 12(b)(1) attacks

on jurisdiction can be either facial, confining the inquiry to the allegations in the complaint, or factual, permitting the court to look beyond the complaint. *Savage v. Glendale Union High Sch., Dist. No. 205*, 343 F.3d 1036, 1039 n. 2 (9th Cir.2003). Where, as here, the moving party has converted the motion to dismiss into a factual motion by presenting affidavits or other evidence to the court, the party opposing the motion must furnish affidavits or other evidence necessary to satisfy its burden of establishing subject matter jurisdiction. *Id.* Where no evidentiary hearing is held,[1] the court accepts as true the factual allegations in the complaint. *McLachlan v. Bell*, 261 F.3d 908, 909 (9th Cir.2001).

■■■ The Declaratory Judgment Act provides, in relevant part, that "in a case of actual controversy within its jurisdiction ... any court of the United States ... may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The phrase "case of actual controversy" in the Declaratory Judgment Act refers to the types of cases and controversies that are justiciable under Article III of the United States Constitution. *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126–27, 127 S.Ct. 764, 166 L.Ed.2d 604 (2007). An actual controversy exists within the meaning of the Declaratory Judgment Act when the dispute is "definite and concrete, touching the legal relations of parties having adverse legal interests." *Id.* at 127, 127 S.Ct. 764 (quoting *Aetna Life Ins. Co. v. Haworth*, 300 U.S. 227, 240–41, 57 S.Ct. 461, 81 L.Ed. 617 (1937)). Further, the dispute must be "real and substantial and admit of specific relief through a decree of a conclusive character, as distinguished from an opinion advising

---

1. Neither party has requested an evidentiary hearing regarding subject matter jurisdiction.

what the law would be upon a hypothetical set of facts." *Id.* (internal quotation marks omitted). The basic question is each case is "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* (quoting *Maryland Cas. Co. v. Pac. Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 85 L.Ed. 826 (1941)). It is not necessary that there be a threat of imminent litigation for an actual controversy to exist. *Id.* at 132 n. 11, 127 S.Ct. 764.

■ Here, the court has little trouble concluding that there exists an actual controversy between the parties that justifies the exercise of subject matter jurisdiction. The legal dispute between Amazon and NACS is clearly delineated: the issue is whether Amazon's present and ongoing use of the three specific advertising claims challenged in NACS's NAD Complaint constitutes a false and misleading representation. NACS has contended, through its NAD Complaint and in its press release, that Amazon's claims are misleading, deceptive, literally false, and unsubstantiated. (*See* Jirgal Decl. Exs. C, D.) Amazon, in its complaint, seeks a declaration that "none of the pricing claims challenged by NACS constitutes false or misleading advertising in violation of Section 43(a) of the Lanham Act," and asserts that it "intends to continue using the textbook advertising claims that NACS asserts are false and misleading to inform college students and their families that better textbook pricing is available through Amazon." (Compl. ¶¶ 7, 35.) Thus, there is nothing hypothetical or speculative about this dispute; rather, the dispute is "real and substantial and admit[s] of specific relief through a decree of a conclusive character"—that is, a declaration that the adver-

tising claims at issue do not violate the Lanham Act—"as distinguished from an opinion advising what the law would be upon a hypothetical set of facts." *MedImmune*, 549 U.S. at 127, 127 S.Ct. 764.

The court finds support in a recent case that also arose out of an NAD complaint. In *Russian Standard Vodka (USA), Inc. v. Allied Domecq Spirits & Wine USA, Inc.*, 523 F.Supp.2d 376, 377 (S.D.N.Y. 2007), the plaintiffs sought a declaratory judgment that certain statements that they had made and planned to continue to make that challenged the "Russian" nature of the defendants' vodka products did not violate the Lanham Act. The defendants issued a press release stating that they would explore legal remedies regarding the authenticity of their vodka, and subsequently filed a challenge to the statements before the NAD. *Id.* at 379. The NAD action proceeded until its final stages, at which point the plaintiffs filed their federal action for declaratory relief. *Id.* The plaintiffs alleged that the actions of the defendants, including initiating a proceeding before the NAD, created an "actual controversy" regarding their ability to continue to challenge the "Russian character" of the defendants' vodka. *Id.* The court held that an "actual controversy" within the meaning of the Declaratory Judgment Act existed between the parties:

> [P]laintiffs allege that they have an advertising campaign centered on highlighting the distinction between Imperia and Stoli vodka, and that they plan to question the authenticity of Stoli vodka. Defendants have engaged in conduct that indicates that there would be a controversy between the parties by sending a cease and desist letter to plaintiffs and initiating a proceeding at the NAD. Both parties conduct indicate [sic] that "there is a substantial controversy, between the parties having adverse legal interests, of sufficient imme-

diacy and reality to warrant the issuance of declaratory judgment" regarding any future statements that plaintiffs will make regarding Stoli's authenticity. *Id.* at 383 (quoting *MedImmune,* 549 U.S. at 127, 127 S.Ct. 764).[2]

This analysis applies with equal force to the dispute between Amazon and NACS in the instant case. Here, as in *Russian Standard Vodka,* Amazon's allegations that it intends to continue using the three advertising claims challenged by NACS, and NACS's conduct in (1) requesting substantiation of Amazon's claims, (2) filing a complaint with the NAD, and (3) issuing a press release publicizing its dispute with Amazon, demonstrate that there is a substantial controversy between adverse parties of sufficient immediacy and reality to warrant the issuance of a declaratory judgment regarding Amazon's right to continue to use its advertising claims. *MedImmune,* 549 U.S. at 127, 127 S.Ct. 764. Because Amazon has met its burden to establish that it satisfies the Declaratory Judgment Act's "actual controversy" requirement, the court concludes that Amazon has also met its burden to establish that the court has subject matter jurisdiction over its claims.[3]

In arguing that the court lacks jurisdiction over Amazon's claim for declaratory relief, NACS relies primarily on cases that were not decided under the Declaratory Judgment Act and all but ignores the standard set forth by the Supreme Court in

*MedImmune.* (*See* Mot. at 7–13.) In its reply, NACS argues that the *MedImmune* standard is not met here because "there is no coercion by NACS that compels Amazon to undertake (or not take) any action." (Reply (Dkt. # 18) at 4.) The court, however, disagrees. By filing its NAD Complaint, NACS placed Amazon in a position in which it had to choose among multiple potentially undesirable outcomes: participating in the NAD process; risking adverse publicity and referral to governmental agencies (*see supra* pp. 4–5 (describing the NAD review process)); or abandoning the use of advertising claims that it contends it has a right to use. *See MedImmune,* 549 U.S. at 129–30, 127 S.Ct. 764. Further, the court is not persuaded by NACS's argument that a complaint seeking a declaratory judgment that an advertising claim is not false or misleading within the meaning of the Lanham Act can be distinguished from a complaint seeking a declaratory judgment of non-infringement of trademark rights under the same Act when determining whether an actual controversy exists. (*See* Reply at 4–5.)

NACS also urges the court to dismiss this action on discretionary grounds. The Declaratory Judgment Act provides that a court "*may* declare the rights and other legal relations of any interested party," 28 U.S.C. § 2201(a) (emphasis added), "not that it *must* do so." *MedImmune,* 549 U.S. at 136, 127 S.Ct. 764. This provision

---

**2.** The *Russian Standard Vodka* court also held that no actual controversy existed with respect to past statements made by the plaintiffs because the defendants had waived their right to sue with respect to those past statements. *Russian Standard Vodka,* 523 F.Supp.2d at 382–83. Here, no such waiver is at issue, and Amazon has made clear that it plans to continue using the challenged advertising claims. (*See* Compl. ¶ 35.)

**3.** NACS contends, in part, that *Russian Standard Vodka* is not on point because the plaintiffs in that case asserted seven claims against the defendants, only one of which involved a declaratory judgment. (*See* Reply at 6–7.) This is a meaningless distinction. The court cannot adjudicate claims for which it lacks subject matter jurisdiction, regardless of whether other claims are asserted in the same action. *See Russian Standard Vodka,* 523 F.Supp.2d at 381 (evaluating the challenged claims under the Rule 12(b)(1) standard).

"has long been understood to confer on federal courts unique and substantial discretion in deciding whether to declare the rights of litigants." *Id.* (quoting *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286, 115 S.Ct. 2137, 132 L.Ed.2d 214 (1995).) Specifically, NACS contends that Amazon brought this lawsuit "solely to avoid the NAD's review of its advertising claims by exploiting the NAD's jurisdictional rule that precludes review of disputes that are the subject of a pending court case." (Mot. at 18.) NACS also expresses concern that "the practice of seeking a declaratory judgment anytime a voluntary proceeding is brought before the NAD to challenge an advertiser's claims does real violence to the NAD review process ... and would clog the courts with meritless suits." (*Id.*) Finally, NACS argues that it constitutes abuse of the Declaratory Judgment Act to allow an advertiser such as Amazon to "avoid inquiry of its claims altogether" by "simply filing suit for declaratory judgment and forc[ing] those seeking information or substantiation to defend such suits in federal court." (*Id.* at 19.)

The court is not convinced. By filing suit in this court, Amazon does not preclude review of its advertising claims or avoid inquiry into the validity of those claims; rather, Amazon subjects itself to a legally binding judgment—win or lose—regarding its ability to use those claims. Further, Amazon is not undermining the NAD's process by filing suit in federal court; the NAD's own rules require it to close its investigation when it learns that the challenged advertising claims are the subject of a court proceeding. (*See* NAD Policies and Procedures ¶ 2.2(B).) Moreover, the court is not persuaded that exercising its discretion to hear the instant case will result in the filing of large numbers of "meritless" declaratory judgment actions seeking judicial determinations of

the validity of advertising claims. As NACS points out, the NAD provides an effective, impartial, and experienced forum for deciding advertising disputes. (Mot. at 18.) The court therefore declines to exercise its discretion to dismiss Amazon's claim for declaratory relief pursuant to 28 U.S.C. § 2201(a).

## B. Personal Jurisdiction

 Having determined that it has subject matter jurisdiction over Amazon's claim for declaratory relief, the court now considers whether it has personal jurisdiction over NACS. In opposing a defendant's motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that jurisdiction is proper. *Mavrix Photo, Inc. v. Brand Technologies, Inc.*, 647 F.3d 1218, 1223 (9th Cir.2011) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1015 (9th Cir.2008)). Where, as here, the defendant's motion is based on written materials, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to dismiss. *Id.* (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir.2010)). The plaintiff cannot simply "rest on the bare allegations of its complaint," but uncontroverted allegations in the complaint must be taken as true. *Id.* (quoting *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir.2004)).

 Where, as here, no federal statute authorizes personal jurisdiction, the district court applies the law of the state in which the district court sits. *Id.* (citing Fed.R.Civ.P. 4(k)(1)(A)). Washington's long-arm statute, RCW 4.28.185, permits the exercise of jurisdiction to the full extent of the Due Process Clause of the United States Constitution. *See Easter v. Am. W. Fin.*, 381 F.3d 948, 960 (9th Cir.

2004). For a court to exercise personal jurisdiction over a nonresident defendant consistent with due process, the defendant must have "certain minimum contacts" with the relevant forum "such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945) (internal quotation marks and citation omitted).

■■■ A court can exercise its power over a nonresident defendant (absent the defendant's consent) only if it has either general or specific jurisdiction. *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir.2000). Where a defendant has "substantial" or "continuous and systematic" contacts with the forum state, it is subject to general jurisdiction, and can be haled into court on any action, even one unrelated to its contacts. *Id.* If a defendant is not subject to general jurisdiction, it may be subject to specific jurisdiction if the action upon which it is sued arises from its contacts within the forum state. *Id.* In either case, the critical factor in determining personal jurisdiction is the extent of the defendant's contacts with the forum state. The court therefore must examine NACS's contacts with Washington to determine if they support the exercise of either general or specific jurisdiction.

### 1. General Jurisdiction

■■■ "A court may assert general jurisdiction over foreign (sister-state or foreign-country) corporations to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, — U.S. —, 131 S.Ct. 2846, 2851, 180 L.Ed.2d 796 (2011). "For gener-

al jurisdiction to exist, a defendant must engage in 'continuous and systematic general business contacts' that 'approximate physical presence' in the forum state. *Mavrix*, 647 F.3d at 1223–24 (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), and *Bancroft & Masters*, 223 F.3d at 1086). "The standard for general jurisdiction 'is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world.'" *Id.* at 1224 (quoting *Schwarzenegger*, 374 F.3d at 801). Thus, a showing that a defendant has systematic business contacts with the forum is insufficient. *Bancroft & Masters*, 223 F.3d at 1086. Rather, the plaintiff must show that the defendant's activities transcend doing business "with" the forum state such that it is fair to say that it is actually doing business "in" the forum state. *Id.; see also Helicopteros*, 466 U.S. at 418, 104 S.Ct. 1868. The Ninth Circuit has regularly declined to find general jurisdiction even where a defendant's contacts with the forum state were quite extensive. *See Amoco Egypt Oil Co. v. Leonis Nav. Co.*, 1 F.3d 848, 851 n. 3 (9th Cir.1993); *see also Mavrix*, 647 F.3d at 1224–25 (discussing Supreme Court cases involving general jurisdiction).

■■■ Here, Amazon argues that NACS is subject to general jurisdiction in Washington based on the following contacts: (1) NACS solicits and serves dues-paying members in Washington, and because NACS has served its members since 1932, it is likely that it has had "continuous and systematic" contact over many decades with its Washington members; (2) NACS receives revenue directly tied to activities in Washington state; (3) NACS conducts activities in Washington on behalf of its

Washington members, including advocating and litigating on its members' behalf, publishing reports, sponsoring discounts, offering a concierge service to its members, and highlighting and promoting its Washington members. (Resp. at 15–17; *see* Jirgal Decl. Exs. N, O, P.) Amazon contends that these contacts demonstrate that NACS "intentionally and systematically" conducts business in Washington, and that, as a result, it is "well-within traditional notions of fair play and substantial justice" for this court to exercise general jurisdiction over NACS. (Resp. at 17.)

The court concludes that these contacts "fall well short of the requisite showing for general jurisdiction." *Mavrix*, 647 F.3d at 1225; *see id.* at 1224–25 (describing cases in which the Supreme Court has determined that general jurisdiction either existed or was lacking). NACS has no offices or staff in Washington, is not licensed or registered to do business in Washington, and has no offices, property, bank accounts, telephone numbers, post office boxes, or employees in Washington. (*See* Schlichenmayer Decl. ¶¶ 4–6.) Although NACS has members in Washington, NACS provides advocacy services and resources for those members—it does not control the activities of those members.[4] (*Id.* ¶ 4.) Based on these contacts, the court concludes that although NACS "does business *with Washington*," it does not "do business *in* Washington." *See Mavrix*, 647 F.3d at 1226 (citing *Schwarzenegger*, 374 F.3d at 801 (nonresident's partnership with forum-based agency was not sufficient to establish general jurisdiction), and *Ban-*

*croft & Masters*, 223 F.3d at 1086 (nonresident's licensing agreements with forum-based television networks and vendors were not sufficient to establish general jurisdiction)). Because Amazon has not met its burden to demonstrate that NACS's contacts are so " 'continuous and systematic' as to render [it] essentially at home in [Washington]," *see Goodyear Dunlop*, 131 S.Ct. at 2851, the court cannot assert general jurisdiction over NACS.

### 2. *Specific Jurisdiction*

■■■■ In the alternative, Amazon argues that NACS has sufficient "minimum contacts" with Washington to justify the exercise of specific jurisdiction. Courts in the Ninth Circuit analyze specific jurisdiction under a three-prong test:

(1) The non-resident defendant must *purposefully direct his activities* or consummate some transaction with the forum or resident thereof; *or* perform some act by which he *purposefully avails himself* of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Mavrix*, 647 F.3d at 1227–28 (quoting *Schwarzenegger*, 374 F.3d at 802). Amazon bears the burden of satisfying the first two prongs. *Id.* If Amazon does so, the burden shifts to NACS to set forth a "compelling case" that the exercise of jurisdic-

---

**4.** Amazon cites *Bennett v. J.C. Penney*, 603 F.Supp. 1186, 1188 (D.C.Mich.1985) for the proposition that general jurisdiction over a trade organization may be asserted based on the organization's solicitation of and performance of services for members in the forum state. (Resp. at 17.) *Bennett,* however, in-

volved an analysis of specific jurisdiction rather than general jurisdiction, and is therefore not on point. *See Bennett,* 603 F.Supp. at 1189 (analyzing whether the cause of action asserted arises from the defendant's forum-based activities.).

tion would not be reasonable. *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 476–78, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

With respect to the first prong of the specific jurisdiction analysis, the court concludes that a "purposeful direction" analysis is appropriate. Amazon seeks a declaratory judgment that its advertising is not false or misleading under the Lanham Act. (Compl. ¶ 37.) Thus, like an action involving copyright infringement, it is a "tort-like" cause of action, making purposeful direction the proper analytical framework. *See Mavrix,* 647 F.3d at 1228.

The Ninth Circuit recently reaffirmed that in purposeful direction cases, it is appropriate to apply an " 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *Id.* (quoting *Yahoo! Inc. v. La Ligue Contre Le Racisme et L'Antisemitisme,* 433 F.3d 1199, 1206 (9th Cir.2006) (en banc)). The effects test, which is based on the Supreme Court's decision in *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), "requires that the defendant allegedly must have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Mavrix,* 647 F.3d at 1228 (quoting *Brayton Purcell,* 606 F.3d at 1128). The Calder effects test does not require "that all (or even any) jurisdictionally relevant effects have been caused by wrongful acts." *Yahoo! Inc.,* 433 F.3d at 1208.

Amazon contends that this case is "strikingly similar" to *Bancroft & Masters,* in which the Ninth Circuit found the exercise of specific jurisdiction to be appropriate. (Resp. at 18.) The court agrees. In *Bancroft & Masters,* the Georgia-based defendant sent a letter to Virginia-based Network Solutions, Inc. ("NSI"), then the sole registrar of Internet domain names, in which it challenged the California plaintiff's use of the domain name "masters.com." *Bancroft & Masters,* 223 F.3d at 1084–85. The defendant also sent a letter to the plaintiff in California demanding that it cease and desist its use of "masters.com" and transfer ownership of the domain name to the defendant. *Id.* at 1085. Rather than transfer the domain name or cease using its website, the plaintiff filed a lawsuit in California federal court seeking a declaratory judgment of non-dilution and non-infringement of the defendant's trademarks under the Lanham Act. *Id.* The Ninth Circuit held that the *Calder* effects test was satisfied when the defendant sent the letter challenging the plaintiff's use of "masters.com" to NSI because (1) the defendant acted intentionally when it sent the letter; (2) the letter was expressly aimed at California because it individually targeted the California-based plaintiff; and (3) the effects of the letter were primarily felt in California. *Id.* at 1088. Further, the Ninth Circuit concluded that the suit arose out of the defendant's forum-based contacts, thus satisfying the second prong of the specific jurisdiction test, because "but for the letter to NSI, ... it is clear that [the plaintiff] would have no need for a judicial declaration of its right to use masters.com." *Id.* Because the plaintiff satisfied the first two prongs of the specific jurisdiction test, the Ninth Circuit moved on to consider whether the defendant met its burden to show that the exercise of jurisdiction would be unreasonable under the third prong of the test. *Id.*

Amazon, like the plaintiff in *Bancroft & Masters,* has satisfied the first two prongs of the specific jurisdiction test. First, with respect to the purposeful direction prong, NACS's intent in filing the

NAD Complaint was to attempt either to force Amazon to substantiate its advertising claims or stop using them. (*See* Jirgal Decl. Ex. D.) Thus, under the *Calder* effects test, NACS's actions relate to Washington because (1) NACS acted intentionally when it initiated its challenge to Amazon's advertising claims in the NAD; (2) NACS expressly aimed its actions at Washington by individually targeting Amazon, the Washington-based plaintiff; and (3) the effects of NACS's challenge to Amazon's continuing use of its advertising claims are primarily felt in Washington, where Amazon is headquartered. *See Bancroft & Masters,* 223 F.3d at 1088. Second, the lawsuit arises from NACS's forum-related activities because, but for NACS's initiation of the NAD proceeding, Amazon would have had no need for a judicial declaration of its right to continue to use its advertising claims. *See id.*

NACS argues that Amazon cannot establish specific jurisdiction because "the NAD proceeding that purportedly gives rise to this demand for declaratory judgment was filed and initiated in the State of New York, not Washington." (Mot. at 16; *see also* Reply at 10–11.) Thus, according to NACS, Amazon cannot show that its claim arises from any act of NACS having any connection with the state of Washington. (*Id.*) This argument fails. It is not necessary that the act giving rise to the lawsuit occur in Washington, but rather that the lawsuit arise from the defendant's forum-related activities. *See Mavrix,* 647 F.3d at 1228; *Bancroft & Masters,* 223 F.3d at 1088 (finding specific jurisdiction in California where the Georgia-based defendant sent a challenge letter to Virginia-based NSI). Here, as discussed above, NACS's filing of its NAD Complaint is a Washington-related activity because it satisfies the *Calder* effects test; and this lawsuit arises from that activity because it

would not have been filed but for the filing of the NAD Complaint. *See id.* Further, to the extent NACS relies on the concurrence in Bancroft & Masters, in which two judges wrote that they would find the effects test satisfied only on the assumption that the defendant engaged in tortious conduct by intending to effect a conversion of the "masters.com" domain name, *Bancroft & Masters,* 223 F.3d at 1089 (Sneed, J., concurring), that reliance is misplaced. The Ninth Circuit, sitting en banc, subsequently held that the effects test does not require that the "jurisdictionally relevant effects have been caused by wrongful acts." *Yahoo! Inc.,* 433 F.3d at 1208.

■ Because Amazon has satisfied the first two prongs of the specific jurisdiction test, the burden shifts to NACS to " 'present a compelling case' that the exercise of jurisdiction would be unreasonable and therefore violate due process." *CollegeSource, Inc. v. AcademyOne, Inc.,* 653 F.3d 1066 (9th Cir.2011) (quoting *Burger King,* 471 U.S. at 477–78, 105 S.Ct. 2174). Courts in the Ninth Circuit consider seven factors in determining if the exercise of jurisdiction is reasonable:

(1) the extent of the defendants' purposeful injection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of the conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum.

*Id.* (quoting *Dole Food Co. v. Watts,* 303 F.3d 1104, 1114 (9th Cir.2002)).

NACS does not address these factors. (*See generally* Reply.) Accordingly, be-

cause Amazon has met its burden to satisfy the first two prongs of the specific jurisdiction test, and because NACS has not met its burden to "present a compelling case" that the exercise of jurisdiction would be unreasonable, the court concludes that its exercise of specific jurisdiction is appropriate in this case. The court therefore denies NACS's motion to dismiss this action for lack of personal jurisdiction under Rule 12(b)(2).[5]

## III. CONCLUSION

For the foregoing reasons, the court DENIES NACS's motion to dismiss Amazon's complaint pursuant to Rules 12(b)(1) and 12(b)(2) of the Federal Rules of Civil Procedure (Dkt. # 14).

---

**5.** In a footnote, NACS briefly argues that the court should also dismiss this case for improper venue under Federal Rule of Civil Procedure 12(b)(3) due to NACS's lack of contacts with the state of Washington. (*See* Mot. at 16 n. 10.) In light of the court's conclusion that the effects of NACS's NAD challenge were felt in this district, where Amazon's principal place of business is located, NACS's venue argument lacks merit. *See* 28 U.S.C. § 1391 (venue is appropriate in a "judicial district in which a substantial part of the events or omissions giving rise to the claim occurred").